THOMPSON, J.
 

 This is an appeal from a judgment granting the wife a separation from bed and board.
 

 The grounds asserted as a basis for separation are substantially as follows:
 

 That said defendant not only neglected your petitioner and his children, but likewise neglected his business and personal affairs until finally he withdrew entirely from all business affairs, devoting his entire time, thought, and attention to the pursuit of new and strange religious teachings.
 

 That said defendant has left petitioner for months at a time, only recently having returned after an absence of over nine months spent in California in a religious school, where he was pursuing these new and strange religious teachings.
 

 That since returning to the matrimonial domicile during the last few days, the conduct of said defendant towards your petitioner has been more unusual and unnatural than- ever before. He has forbidden petitioner to associate with her friends or to take part in any of the social activities to which she has been accustomed and to which said defendant has been accustomed prior to the time when- this change came over him.
 

 That said defendant has forbidden petitioner to leave the house or to take part in any of the temporal affairs of life to which she was accustomed and to which her and her said husband’s station in life entitles her.
 

 That the conduct of said defendant in the particulars above set forth, and many others, has been such as to bring great humiliation to her, and in the eyes of her family and friends to degrade her.
 

 That said defendant, obsessed as aforesaid with his strange spiritual ideas, has continually found fault with petitioner, accusing her of leading an empty life, speaking to her in the presence of her family and friends in •a manner calculated to humiliate and embarrass her, and even accusing petitioner of being unfit properly to rear, educate, and train their said children.
 

 All of which it is alleged constitutes such cruel and inhuman treatment as to render their living together insupportable.
 

 The couple were married in this city on December 23, 1914.
 

 They were both of the Jewish religion, and were married in that faith. At the time of the marriage the husband was established in business, being the president of the Krauss Bros. Lumber Company, and as such drew a salary of $12,000 per year with an additional income from the earnings of the company.
 

 During the period of six or eight years following the marriage the domestic relations were all that could be desired. They were devoted to each other. They moved in the best and highest social circles. They visited and mingled with their large circle of friends of all religious faiths.
 

 They had their friends and the members of. their respective families- visit them at
 
 *221
 
 their home. They attended together picture shows, theaters, and other places of innocent amusement and recreation.
 

 In the course of time two girl babies came to bless and to further cement, if possible, their already happy union.
 

 The salary of the husband enabled him to maintain a home with some five servants, an expensive automobile with a hired chauffeur, and to make an allowance to the wife of some $800 or $1,000 per month to meet household expenses.
 

 In the early summer of 1922 the defendant abandoned the Jewish faith and became a Christian, accepting Christ as his Savior.
 

 Following this change of heart the defendant became neglectful of business affairs and particularly of the interest in the business of which he was the practical head, and devoted a large part of his time to religious work and study.
 

 This brought about a severance of all business relations between himself and his father and brothers.
 

 On an adjustment of the business the defendant was let out and his interest was fixed at $25,000, which amount it was agreed should be retained by one of the brothers at an annual interest of 10 per cent, to be paid to the defendant.
 

 Thereafter the defendant ceased all business pursuits, abandoned all temporal and worldly affairs of life, and devoted his entire time to his religious study and work. He did not earn a dollar from the time he-left his former business up to the trial of this case, covering a period of some four years. The interest on his capital was not sufficient to support himself and family at the former standard of living, if such had been maintained, and he was forced even under the changed circumstances and conditions of living to draw upon his capital.
 

 He allowed all fire insurance on household property and a policy on his life of some $17,500 to lapse.
 

 He turned over his apartment in this city to his wife’s sister and went to Philadelphia to attend a Bible school. His wife and daughters soon joined him in that city.
 

 While attending this school the defendant was stricken with the flu, and on the eve of his recovery the family was summoned back to New Orleans on account of serious illness of the wife’s father.
 

 The defendant had bought a house in this city in which he conducted religious services, but finally sold it, and after his return from Philadelphia his services were held at various places, sometimes on the streets and in the living room at his home.
 

 There was admittedly an entire reversal of the former style and manner of living and an entire change in the domestic relations between husband and wife. The defendant was no longer the companion to his wife that he had been in the past.
 

 He abandoned all purely social activities and manifested a total lack of interest in the business affairs of the world.
 

 He gave up all of his friends and insisted on his wife doing the same. He did not want his wife to go out with her friends, nor-to have any of them come to the house.
 

 When friends did come he absented himself and acted so rudely that his. wife was forced to forego the pleasure of entertaining her friends -in her own home. He forbade his wife to go to shows, theaters or concerts. He accused her of leading an empty life and of being unfit properly to rear, educate, and train their children. He held audiences in the living room composed of people of all stations in life — people with whom neither he nor his wife had theretofore associated.
 

 All of which conduct on the part of the husband had the effect of keeping away from the home many of their former friends and associates and of degrading and humiliating
 
 *223
 
 'the plaintiff in' the eyes of her friends, former associates, and the respective families ■of both husband and wife.
 

 In September, 1923, the defendant went to Los Angeles, where he attended a Bible school for some nine months. His wife begged him not to go, and declined to go with him, giving as a reason that she had “undergone so many hardships in her stay with him in Philadelphia she did not ■ wish to experience a like condition by following him to Los Angeles.
 

 During all of this time the wife, while protesting the unusual and unnatural conduct of her husband toward her and her friends, bore it all with a remarkable degree of Christian fortitude.
 

 She even went so far as to feign acceptance of the new faith which her husband professed to have found.
 

 While in Los Angeles the plaintiff wrote her husband several letters in which she expressed her continued love and affection for Iiim. But it is apparent that there was concealed beneath these endearing messages a deep and grievous sense of mental worry and suffering endured perhaps with the hope and expectation that the defendant would eventually realize that his religious belief and practice did not exact that he should abandon all duties which he owed to his wife and children, and that he could consistently with his religious faith continue to perform those legal and sacred duties of husband and father.
 

 In one of these letters she wrote:
 

 “I have tried to be consistent to a proper relationship between you and me. What are the pleasing results that would follow with you and me, with you in Los Angeles and me in New Orleans? I do not expect you to cater to my desires; you haven’t done anything that would in any way be catering to my desires for years. * * * ”
 

 “Can you for instance name anything that you can where you have had to cater to my desires lately? Will you answer this question? I am very willing to act as I should.
 

 “How can you say you are trying to establish a home for us on a proper basis, the way we lived in Philadelphia last year?”
 

 Again, in another letter, she said:
 

 “Now you say in your letter * * * that I am very uncompromising; why is it that I am the one to compromise? Haven’t you been away from your family now for six months as a duty? Now do you think that you owe it to your family to come home to them in June. * * * I am very soiwy — I love you axxd if you love us you will return to us.
 

 “0, dear, I do feel so for you, and am'glad that your heart is so clean, but please do not go so far away from yourself. * * * ”
 

 When ■ the defendant returned home, the latter part of June, 1924, the final breach came, and the plaintiff left the common dwelling.
 

 It is contended on behalf of the defendant that the religious differences between the spouses and the break between plaintiff’s father and defendant furnished the only cause on which the suit for separation is founded.
 

 We do not think this argument is sustained by the record when considered as a whole.
 

 If the plaintiff’s evidence went no further than to show religious differences that would end the case.
 

 The law has not designated and indeed could not make diverse religious opinions a legal cause for separation. The fundamental law of the land guarantees freedom of religion and the right to worship according to the dictates of one’s own conscience.
 

 The defendant had the legal and moral right to pursue and to practice his own religious faith, and no court could deny such right or even criticize adversely the proper exercise of that right.
 

 But no law, divine or human, can be found to justify a husband in practicing his religious faith in such a manner as to reduce his wife and children to a state which would ultimately if continued, lead to extreme pov
 
 *225
 
 erty. It is a warning of divine origin that he who does not provide for his own and especially for those of his own house, hath denied the faith and is worse than an infidel. Nor was the husband justified in so practicing his religious faith as to completely ostracize his wife from the public ahd to make of her a perfect recluse, to degrade her social status, and to humiliate her by forcing her to sever all associations and,contact with her friends and the public in general except those of his own household of faith.
 

 There cannot be found any religious tenets which would justify the husband in publicly declaring that his wife was leading a vain, and empty life and was unfit to rear, educate, and train her children because forsooth she did not follow him in his religious convictions.
 

 IVe said on the former hearing of this case, Trautman v. Krauss, 159 La. 373, 105 So. 376, that if the petition showed nothing more than that the defendant had changed his religion and was attempting to proselyte his wife and children, it would not disclose a cause of action for separation, but we did not hold, nor did we intend to hold, that the practice of religion, or one’s religious conduct, may not be of such a nature and character as to constitute cruel treatment which would justify a separation.
 

 We said, to the contrary, that:
 

 “It is not impossible that such nagging as the plaintiff has charged against her husband could amount to cruel and intolerable treatment.”
 

 The courts will look, not so much to the originating cause of the cruel treatment, but to the nature and character of the treatment itself in determining the question as to whether it amounts to such cruelty as to warrant a separation.
 

 The facts which we indicated in the former opinion the plaintiff was entitled to be heard on were established on the trial below.
 

 Those facts have already been noted, and it is unnecessary to repeat them.
 

 It suffices to say that they show sufficient ground for the judgment of separation.
 

 In Corpus Juris, vol. 19, p. 49, it is stated:
 

 “It was formerly thought that actual bodily harm, or apprehension thereof, must be shown to authorize granting a divorcé on the ground of cruelty, and this doctrine seems still to prevail in a few jurisdictions; but this view has been generally repudiated and the modern doctrine is that any unwarranted conduct by either spouse which causes the other mental suffering of sufficient degree constitutes such cruelty as will authorize a divorce.”
 

 And where the conduct of a spouse is calculated permanently to destroy the peace of mind and happiness of the other so as utterly to destroy the objects' of matrimony, a divorce may be granted on the ground of cruelty.
 

 Our own court, in Olberding v. Gohres, 107 La. 717, 31 So. 1029, said:
 

 “A husband may be guilty of outrages towards his wife' of character such as to render their living together insupportable, without raising his hands against her.
 

 “His conduct may be the very refinement of cruelty, without either force or blows.”
 

 We must hold therefore that any unjustifiable conduct on the part of either husband or wife which so grievously wounds the mental feelings of the other, or such as in any other manner utterly destroys the legitimate ends and objects of matrimony, constitutes cruelty, although no physical or personal violence may be inflicted or threatened.
 

 As well said by some writer, if it be true that we are possessed of social, moral and intellectual notions, with wants to be supplied, with susceptibilities of pain and pleasure, if they can be wounded and healed, as well as the physical part, with accompanying suffering and delight, then we think that conduct which produces perpetual social sorrow may well be classed as cruelty and entitle the sufferer to relief.
 

 There appears very little hope under a
 
 *227
 
 continuance of present conditions for reuniting the broken ties, and hence we do not feel justified in condemning the plaintiff to what appears to us to be a life of misery and suffering by rejecting her demand. We are therefore constrained to affirm the judgment. It is only for a separation, and .the parties will have one year for reflection before the marriage ties can be finally dissolved.
 

 Judgment affirmed.
 

 O’NIELL, O. J., dissents.
 

 LAND, J., concurs in decree.