372 So.2d 639 (1979)
Mildred N. WATSON, Plaintiff and Appellant,
v.
Willie Leroy WATSON, Defendant and Appellee.
No. 12635.
Court of Appeal of Louisiana, First Circuit.
May 29, 1979.
*640 L. B. Ponder, Jr., Amite, for plaintiff and appellant.
W. Hugh Sibley, Greensburg, for defendant and appellee.
Before CHIASSON, EDWARDS and SARTAIN,[*] JJ.
SARTAIN, Judge.
Mildred N. Watson brought suit against her husband, Willie Leroy Watson, seeking a separation from bed and board based on abandonment and cruelty. Mr. Watson answered with a general denial and reconvened for a judicial separation on the ground of cruel treatment. Following the hearing on the merits, the matter was taken under advisement and subsequently the trial court entered judgment for Mrs. Watson and against Mr. Watson, but he expressly based the separation suit on a finding of mutual fault. Alimony pendente lite was fixed at $250.00 per month. Mrs. Watson appeals seeking an increase in the alimony award and a reversal of the finding of fault on her part. We are not favored with either oral or written reasons for judgment. Mr. Watson has neither appealed nor answered the appeal of Mrs. Watson. Therefore the issue as to his fault and Mrs. Watson's right to a separation is now final.
In the recent case of Brocato v. Brocato, 369 So.2d 1083 (La.App. 1st Cir. 1979), we discussed the 1976 reenactment of Civil Code article 141 and therein determined that a separation based on mutual fault was authorized only when both parties were guilty of fault constituting independent grounds for separation under Civil Code article 138. Saucier v. Saucier, 357 So.2d 1378 (La.App. 4th Cir. 1978); Dixon v. Dixon, 357 So.2d 856 (La.App. 4th Cir. 1978). Accordingly, the question is whether the evidence presented by Mr. Watson relative to the averred fault of his wife is sufficient to constitute independent grounds for a separation. The trial judge obviously found that it did.
The issue as to Mrs. Watson's fault involves Mr. Watson's allegations that she denied him the companionship of his adult children by a previous marriage and his accusations during the trial on the merits that she ordered him from the matrimonial domicile.
On the question of Mrs. Watson's relationship with her husband's adult children, it is apparent that their association is less than cordial. There has been very little contact between Mrs. Watson and the Watson children since the occurrence of an argument approximately six years ago. Each side blames the other for instigating the argument and continuing the hostility.
However, more pertinent to the instant controversy is Mr. Watson's testimony that shortly before the separation his daughter was seriously ill in a hospital in New Orleans and it was necessary that he visit her daily and often remain until late at night. He claims that on one occasion when he returned home late his wife said that if he was going to go every day he might as well get his clothes and move to New Orleans. Mrs. Watson denied having made any such statement. Both parties offered the testimony of other witnesses in support of their respective claims.
The differences between the parties came to a head on May 2, 1978, when according to *641 Mrs. Watson she confronted her husband with a telephone bill that purported to show a call to an unlisted number, which she claimed belonged to a lady companion with whom he had been seen. According to her version of the incident, he admitted the affair and moved from the home. Mr. Watson's version of the matter was that his wife frequently accused him of seeing other women and that he was so angered by the accusation on this particular occasion that he decided to go to their camp for a few days rather than listen to her. He stated that he returned home on May 5th "to talk the thing over" but before he could say anything she ordered him to leave, which he did and he has not returned. He denied any improper conduct with another woman. In explanation of the phone bill which prompted his wife's accusation, he stated that in the course of his trailer sales business he made many phone calls to women as he had eight or ten women in various locations who helped him contact potential customers. He testified that the calls that had upset his wife were legitimate business calls to one of these salespersons. Mrs. Watson's evidence relating to her husband's alleged association with another woman consisted solely of her uncorroborated accusations. The remainder of her evidence was hearsay and properly excluded by the trial judge on objection.
The issues thus framed presented a credibility question to the trial judge which he resolved adversely to Mrs. Watson. This determination on the part of the trier of fact is entitled to great weight and cannot be reversed by us on appeal unless we are satisfied that it is manifestly wrong. We find that it is not.
The second issue for review is the adequacy of the alimony award. Mr. Watson asserts that the appeal on this issue was untimely since the judgment fixing alimony was signed on June 30, 1978, following a hearing on a rule and the appeal was not taken until November 13, 1978. The timeliness of the appeal of the separation judgment, which was signed on October 27, 1978, is not disputed.
We hold that the appeal of the alimony award was timely since it was perfected within the prescribed thirty-day period from the signing of the final judgment in the separation suit. C.C.P. art. 3943. We note that at the trial on the merits the testimony taken earlier at the hearing on the rule to fix alimony pendente lite was offered into evidence without opposition. The judgment rendered following the trial included an award of alimony pendente lite in the amount of $250.00 per month. The appeal from this judgment was timely and since it included an alimony award the issue of the sufficiency of that award is properly before us.
By way of explanation, we should point out that the earlier judgment on the rule to fix alimony was an appealable judgment. Lodatto v. Lodatto, 238 La. 305, 115 So.2d 359 (1959); Traylor v. Traylor, 337 So.2d 922 (La.App. 3d Cir. 1976); Fuori v. Fuori, 316 So.2d 802 (La.App. 1st Cir. 1974); Brown v. Brown, 245 So.2d 501 (La.App. 3d Cir. 1971). Since it was not appealed, it became final and continued in effect up until that point when it was abated and replaced by the October judgment which contained a new award of alimony.
On the issue of the adequacy of the $250.00 alimony award, we affirm the trial court's ruling, finding it to be well within the broad range of discretion a trial court has in such cases. Staser v. Staser, 347 So.2d 514 (La.App. 2d Cir. 1977).
Mrs. Watson testified that her only income was the $394.00 payment she received monthly from teachers' retirement together with the interest earned on a $2000.00 to $3000.00 savings account. She maintained that she needed an additional $750.00 per month to meet her expenses and continue to live in the manner she had lived during her marriage.
However, she failed to prove that Mr. Watson had sufficient means to justify such an award. Mrs. Watson testified that her husband was involved in several business enterprises. For some of the businesses, she was able to estimate the gross receipts, *642 but she could not testify as to net profits. In regard to the other business ventures, she had no information at all. Mr. Watson maintained that his business expenses were such that in the month preceding the hearing his income was only $450.00. His income tax returns for the years 1975 and 1976 show a net loss each year. The paucity of evidence on Mr. Watson's means convinces us that the lower court's award was adequate.
For the above reasons, the judgment of the district court is affirmed. Costs of this appeal are assessed against the plaintiff-appellant.
AFFIRMED.
NOTES
[*] Serving by appointment of the La.Sup.Ct.