390 So.2d 978 (1980)
Ollie Tatum VAIL, Plaintiff-Appellant,
v.
Max Dalton VAIL, Defendant-Appellee.
No. 14325.
Court of Appeal of Louisiana, Second Circuit.
October 28, 1980.
*979 Kenneth C. Thomas, Shreveport, for plaintiff-appellant.
Love, Rigby, Dehan, Love & McDaniel by Joe Cordill, Jr. and Samuel P. Love, Jr., Shreveport, for defendant-appellee.
Before MARVIN, JASPER E. JONES and FRED W. JONES, Jr., JJ.
MARVIN, Judge.
In this action where the husband and the wife each sought a separation against the other, the judgment granted the separation to the wife on grounds of adultery, rejected the husband's demands, but specifically found the wife to have been at fault in contributing to the break-up of the marriage. Because this latter finding effectively precludes the wife from permanent alimony after a divorce under CC 160, the wife appeals the judgment, contending that the trial court erred factually and legally. We amend and affirm, for reasons we assign.
In an action for a legal separation, a trial court may determine the fault issue as it affects a spouse's right to claim permanent alimony after a divorce. See Guin v. Guin, 378 So.2d 1022 (La.App. 2d Cir. 1979).
The fault which will deprive a spouse of this right must be of such a degree that it would independently constitute grounds for a separation. See Pearce v. Pearce, 348 So.2d 75 (La.1977). The initial fault on the part of one spouse which would render further marital relations insupportable may provoke some reasonably justifiable response on the part of the other spouse. A response by the other spouse in this context, however, is not fault within the meaning of CC 160 which will preclude permanent alimony. See Bruner v. Bruner, 364 So.2d 1015 (La.1978); Pearce, supra, and cases cited therein. The fault issue must be determined by the circumstances of each case and cannot be considered in the abstract.
Notwithstanding this finding of fault on the part of the wife, the trial court, in its reasons for judgment, declined to find mutual fault on the part of the wife as a ground for separation under CC 141, because the husband, admittedly slept overnight at the home of another woman and her children with some regularity two nights a week.
We are bound by the trial court's finding of fault on the part of the husband because the husband did not appeal or answer the wife's appeal.[1] The only issues before us relate to the wife's fault.
*980 The record contains detailed evidence that the wife repeatedly complained to and nagged the husband about his being uncommunicative, she physically assailed him, kicked him, cursed him, scratched him on the face on one occasion, threw water on him on another, and threw a money bank at him on another. She deprived him of sleep on more than one occasion. She told him more than one time to leave the house, while in almost the next breath pleading with him to stay and work things out. The trial court found this to be an "overreaction" to the husband's "seeing" the female friend and that her "reaction was one that contributed to the breakup of the marriage and ... to [his] leaving the house." All of the husband's silence was not attributable to the female friend. The marriage had been unhappy for many years before the female friend appeared on the scene. The husband testified:
"[These] problems had been going on with our marriage for a long time ... it was a buildup over the last years ... Things had got worse ... even 10 years ago she accused me of having a girlfriend... just on anything ... she could find to pick at me to argue about, well, she did... looking at a house [and] considering buying it ... We would have separated [11 years ago] but it was because she was pregnant is the reason I didn't leave ... it was unbearable then but I already had one little baby and another ... was on the way, and I couldn't see ... myself leaving."
We cannot say that the lower court was clearly wrong in concluding that the wife's fault (her repeated nagging, verbal and physical cruel treatment), at least contributed to the husband's leaving the marital domicile. This conclusion is supportable even though the lower court expressly considered but declined to render a separation on the ground of mutual fault. CC 141.
The wife's pre-separation fault (cruel treatment) constitutes independent grounds for a separation. This fault may be decreed so as to affect her rights to CC 160 permanent alimony, even though the trial court renders a judgment of separation in favor of the wife on other grounds. That was the result in Adams v. Adams, 380 So.2d 737 (La.App. 4th Cir. 1980), where only the wife, who was granted a separation on grounds of the husband's abandonment, appealed because the judgment also decreed her to be at fault in causing the separation. There, as here, the husband did not appeal and the appellate court was precluded from considering his fault or the obvious legal inconsistency in the judgment in the light of CC 141. Approving this approach, but reversing on the facts, the Supreme Court said:
"However, the better approach, where such an inconsistency is present, is to examine whether the record supports the finding at issue without regard to other findings not before the Court. Dixon v. Dixon, 357 So.2d 856 (4th Cir. 1978); *981 Watson v. Watson, 372 So.2d 639 (4th Cir. 1978). Thus, we only consider whether the lower courts erred in determining that plaintiff was at fault in causing the separation." 389 So.2d 381, 382 (La.1980).
Since the 1979 amendment to CC 160, following Orr v. Orr, 440 U.S. 268, 99 S.Ct. 1102, 59 L.Ed.2d 306 (1979), permanent alimony is no longer gender related. The fault decree below should be amended to reflect that both spouses are affected by the decree because of their respective fault.
Accordingly, the fault decree of the judgment is amended to read:
IT IS ORDERED AND DECREED that the fault of both parties contributed to the separation for the purposes of CC 160 permanent alimony.
The judgment otherwise, and as amended, is AFFIRMED at appellant's cost.
NOTES
[1] The evidence shows that for about three months before the husband moved out of the family home in March 1979, the wife repeatedly questioned the husband about a female friend who worked in a grocery store he periodically served as a milkman. He saw her only in the store during working hours.

"I would [respond to my wife's questions and] tell her the truth ... no, I have not kissed her, no, we have not held hands, no we have had no sexual affair going on and I have not seen her on any occasion after working hours."
Since the March 1979 separation, the husband has stayed overnight at the apartment of the female friend and her three children, initially to assist her when the younger children were ill much later in 1979. Beginning in January 1980, the husband periodically began staying about two nights each week at the apartment of this friend and her children. She and her 14-year-old daughter testified, along with the husband. He stayed there during week nights when he had to work the next day, but not on weekends. He always slept with one or the other of the younger boys and left the home in time for his milk route which begins at 4:00 a. m. The husband and the female friend deny any romantic or physical involvement. They deny having been alone together or in a state of undress at any time. He stays in Waskom on the other nights and on weekends. There was no testimony about a particular act of adultery, or that the husband and his female friend were living together either as man and wife or in open concubinage. For an excellent discussion of the problems arising from and the effects of extra-marital male-female relationships, see Richards, "Pleading and Proof of Adultery as a Ground for Divorce", Vol. 27, La.B.J. No. 4, at p. 312 (March 1980); Manley v. Manley, 389 So.2d 454 (La.App. 2d Cir. 1980); Howes v. Howes, 388 So.2d 1182 (La.App. 4th Cir. 1980).