SARTAIN, Judge.
In this suit both parties seek a separation, the husband on his main demand and the wife on her reconventional demand. The trial court granted a judgment in favor of the wife but also determined that she “was not free from fault.” The wife appealed on the issue of fault. The husband answered the appeal seeking a reversal of the judgment against him to one in his favor. The incidental matters of custody of the minor children, alimony pendente lite for the wife and support for the children are not at issue. We reverse as to the finding of fault on the part of the wife and otherwise affirm.
In his judgment the trial judge made the following findings:
“Mr. Bennett was at fault for refusing counseling, telling his wife he did not love her and ultimately leaving the domicile. Mrs. Bennett was not free from fault. Her change in lifestyle (intense commitment to religion) was a contributing factor in the ultimate deterioration of this marriage.”
The testimony reveals that Mr. and Mrs. Bennett were married in 1961. Both were Presbyterians and shortly thereafter they became affiliated with the Jefferson Presbyterian Church, Jefferson Parish, Louisiana. Mr. Bennett was then employed by the Jefferson Parish School Board as a music teacher and band director. He derived outside income through his performance with a local band. By his own admission he rarely attended church. When their two children were small Mrs. Bennett either took them to church or saw that they attended.
In 1966 Mr. Bennett was employed by the Tulane University Center, a position he presently holds. He is in charge of all of its entertainment activities for students, including speakers, movies, and musical productions. He has also incorporated his own band (Jubilation, Inc.) and concedes that these pursuits necessitate his absence from the family home on an average of four to five evenings a week. He stated that during the earlier years of his marriage and until some time in 1974, he and Mrs. Bennett entertained in their home and that she was an excellent hostess. However, he claims that in 1974 Mrs. Bennett became associated with the Westwego Assembly of God Church and that from that date on she has become obsessed with religion. She remained in the kitchen when they entertained which was a source of embarrassment to him. She likewise commenced to restrict the type of movies and television programs the children were permitted to attend and observe. In August of 1975, and over his objection, Mrs. Bennett commenced the operation of a retail business. (Gospel Bookstore, Ltd.), selling religious items and literature. The inference is that this business is also associated with her church. He also objects to the fact that both of their children (a son 17 and a daughter 14) attend *18 private schools associated with her church. He stated that his wife and children attend church three to five times a week and have a prayer service in their home one evening a week. He found her zealousness and the proselytizing of his friends and relatives embarrassing. It affected his feelings towards her and “it’s just a matter of gradually growing apart over a period of time.” He does not now love his wife, told her so, and declined to go to counseling on her suggestion. During a discussion between the two he claims she asked him to leave.
Mrs. Bennett’s testimony concerning their early marriage coincides generally with that of her husband. However, she denies that she raised any objection to the entertainment of her husband’s band and university associates in the home. She stated that when the children were young she had the sole responsibility of their religious training. Her husband rarely if ever attended church. He was away from the home an average of five to six evenings a week. On the Sunday mornings he was home he slept late. To her “honest remembrance” she could not recall a single instance when her husband attended church with her and the children from 1961 to 1978. She denies ever objecting to any type of entertainment in the home and went to the kitchen only to replenish the type of refreshment being served. She acknowledged that she objected to going to certain types of movies with her husband and did scrutinize the children’s television programs. She claims that the children have never been in any kind of trouble.
With respect to her church affiliation she stated that she was not happy with the Jefferson Presbyterian Church and desired to change. She visited several churches before selecting the Westwego Assembly of God Church. The children agreed with her selection and also attend. They go to this church on Sunday mornings and evenings and have a study group one evening a week in their home which is scheduled for an evening Mr. Bennett is occupied with his endeavors and would not be present. She said her husband never voiced any objection about her religious persuasion or church activities until shortly before they separated. He also approved of her opening the book store. Both use the same C.P.A. for their personal tax return, Jubilation, Inc., and Gospel Bookstore, Ltd. She claims that the book store is non-denominational and sells Sunday School supplies, church supplies, Christian music to all churches. It does not handle religious literature used by Westwego Assembly of God Church. The daughter does attend a private school conducted by another church of the same general faith. The son attends a private Catholic parochial school that was mutually selected by her and her husband when it was decided for reasons not pertinent to this litigation that he should change from a local public school.
She claims to still love her husband and that she never asked him to leave. She stated that several days before he left he called her from work and told her he was leaving. She asked him to wait until the weekend because the children were scheduled to be out of town.
The above quoted findings of the trial judge, although contained in the final judgment, represent the extent of his reasons for judgment. Inherent in this determination is the conclusion that the judgment is based on C.C. art. 141, which provides:
“A separation from bed and board shall be granted although both spouses are mutually at fault in causing the separation. In such instances, alimony pendente lite may be allowed but permanent alimony shall not be allowed thereafter following divorce.”
The fault contemplated in C.C. art. 141 is conduct on the part of each spouse which, standing alone, would support a judgment of separation. Saucier v. Saucier, 357 So.2d 1378 (La.App. 4th Cir. 1978); Brocato v. Brocato, 369 So.2d 1083 (La.App. 1st Cir. 1979), writ refused, 371 So.2d 1341 (La. 1979); and Adams v. Adams, 389 So.2d 381 (La.1980).
We have no difficulty with the trial judge’s determination of fault on Mr. Bennett’s part. His statement to her that he *19 no longer loved her, which he repeated at the trial, coupled with his departure from the marital home, constitute ample grounds for a separation, unless he can show that his wife was also at fault and gave him cause to abandon her. C.C. art. 138(5).
The thrust of Mr. Bennett’s argument is rather directly stated in his counsel’s brief where the “critical issue” is posed in the following query: “Have we progressed far enough to the point where we can recognize and acknowledge that religious zealousness can destroy a marriage, in this case did destroy a marriage, and that the behavioral aberrations brought about by such zealousness do constitute ‘fault’ within the meaning of that term in the Louisiana Civil Code?” Under the facts of this case, we think not.
We find the rationale expressed in Krauss v. Krauss, 163 La. 218, 111 So.2d 683, 685 (1927), appropriate here. There the court stated:
“It is contended on behalf of the defendant that the religious differences between the spouses and the break between plaintiff’s father and defendant furnished the only cause on which the suit for separation is founded.
“We do not think this argument is sustained by the record when considered as a whole.
“If the plaintiff’s evidence went no further than to show religious differences that would end the ease.
“The law has not designated and indeed could not make diverse religious opinions a legal cause for separation. The fundamental law of the land guarantees freedom of religion and the right to worship according to the dictates of one’s own conscience.
“The defendant had the legal and moral right to pursue and to practice his own religious faith, and no court could deny such right or even criticize adversely the proper exercise of that right.
“But no law, divine or human, can be found to justify a husband in practicing his religious faith in such a manner as to reduce his wife and children to a state which would ultimately if continued, lead to extreme poverty. It is a warning of divine origin that he who does not provide for his own and especially for those of his own house, hath denied the faith and is worse than an infidel. Nor was the husband justified in so practicing his religious faith as to completely ostracize his wife from the public and to make of her a perfect recluse, to degrade her social status, and to humiliate her by forcing her to sever all associations and contact with her friends and the public in general except those of his own household of faith.
“There cannot be found any religious tenets which would justify the husband in publicly declaring that his wife was leading a vain and empty life and was unfit to rear, educate, and train her children because forsooth she did not follow him in his religious convictions.
* * sk * * *
“The courts will look, not such much to the originating cause of the cruel treatment, but to the nature and character of the treatment itself in determining the question as to whether it amounts to such cruelty as to warrant a separation.
Sfs * Sfc * * *
“And where the conduct of a spouse is calculated permanently to destroy the peace of mind and happiness of the other so as utterly to destroy the objects of matrimony, a divorce may be granted on the ground of cruelty.
* * * * * *
“We must hold therefore that any unjustifiable conduct on the part of either husband or wife which so grievously wounds the mental feelings of the other, or such as in any other manner utterly destroys the legitimate ends and objects of matrimony, constitutes cruelty, although no physical or personal violence may be inflicted or threatened.”
In the present case the only persons to testify were the parties themselves. No other evidence was offered. The averments of Mr. Bennett are wholly unsupported save *20 by his own statements and the conclusions he has reached. The record is totally barren of any effort made by him to signify his objection to his wife’s religious persuasion and/or endeavors until shortly before they separated and after he had determined that they were a source of embarrassment to him, had a disrupting influence upon his family life, and had already come to the conclusion that he no longer loved her. Throughout this period he concedes that she maintained the home, prepared the meals and shared the marital bed with him. When the objection was finally made he declined counseling and soon thereafter departed the home. We find that he has failed to prove legal fault on the part of Mrs. Bennett.
For these reasons the judgment of the district court insofar as it determined that Mrs. Bennett “was not free from fault” is reversed. In all other respects the judgment of the district court is affirmed at Mr. Bennett’s costs.

REVERSED IN PART, AFFIRMED IN PART.