MARVIN, Judge.
From a judgment awarding a legal separation on the grounds of mutual fault, the wife appeals, contending that she was not guilty of fault which would constitute an independent ground for separation and that she should have been awarded judgment because of the husband’s abandonment.
From the husband’s own testimony, we readily find that he abandoned his wife without cause. CC 138(5), CC 143. Quinn v. Quinn, 412 So.2d 649 (La.App. 2d Cir. 1982). Even when viewed most favorably in support of the judgment, the record does not support a finding of mutual fault on the part of the wife. CC 141, 138(3). Accordingly, we amend and recast the judgment and, as amended, we affirm the judgment of separation.
The 21-year-old husband and the 16-year-old wife married on May 12,1981, when she was six or seven months pregnant. The child was born July 26 and the husband and wife ceased living together on Sunday, August 30, 1981.
After an argument on that Sunday morning about her telephoning his friends and checking up on him, the wife gathered some clothes and told him that she was going to her mother’s. He said that he “took it [that] she was leaving for good.” He then left the family apartment and, after spending the day with friends at the race track, returned to the home of his parents. At his instruction, they went to the apartment about 9:00 p.m. and told the wife that they had come to pick up some of his clothes and to inform her that he desired to end the marriage. At the wife’s suggestion,- she and his mother then drove to his parent’s home to allow the wife to ask the husband to resume the marital relation and to return to the apartment. He admits that he refused, saying, “no way ... It never would work.” He also admits that his wife again asked him to “move back with her” and that he again refused on an occasion when they happened to meet at a mutual friend’s house after they had separated.
The wife’s affirmation from the witness stand on January 15, 1982, that she wanted a separation “today in court” does not support the conclusion of the trial court that “both .. . have said they do not want to live together any more ...”[1] This con *511 duct by the husband constitutes cruel treatment, as she alleged, and abandonment, as she showed, without objection by him. CC 138, CC 143.
In reasons for judgment the trial court found
“[T]he Court feels like there has been sufficient evidence placed in the record that the fault is the part of both parties. While both parties have some valid defenses to what they have done, there is also an obvious question of lack of understanding of the marital obligation and lack of maturity to the extent that the Court feels like forcing these two people to live together, and both of them have said they do not want to live together any more, certainly is not correct in any issues as between them. That says nothing of the fact that there is a paternity suit, which is, as I have mentioned earlier, if it were nothing else, would almost cause the living together insupportable when they have got a paternity suit between them, which is at issue.”
The fault required for a CC 141 mutual fault separation is conduct which would constitute an independent ground for separation under Civil Code Article 138. Adams v. Adams, 389 So.2d 381 (La.1980); Miller v. Miller, 398 So.2d 1162 (La.App. 2d Cir. 1981). That conduct must be such that it would render further living together insupportable. CC 138(3). This fault has also been defined as “unjustifiable conduct on the part of either husband or wife which so grievously wounds the mental feelings of the other, or such as in any manner utterly destroys the legitimate ends and objects of matrimony.” Guin v. Guin, 378 So.2d 1022 (La.App.2d Cir. 1979). See also Krauss v. Krauss, 163 La. 218, 111 So. 683 (La.1927).
The husband’s contention below and here concern the “interference” in the marriage by the wife’s parents and the failure of the wife to cook supper for him every night and to keep a clean and orderly home.
There is no evidence that the wife sided with her parents against the husband even should we assume “interference”. Here the wife’s father employed the husband, raised his salary from about $160 before the marriage to about $400 per week after the marriage, and allowed him the use of a truck owned by the father’s business. Some of the advice or chastisement of the husband concerned use of the business truck. Other advice and chastisement of her parents concerned financial matters and was directed at both litigants. Solely because one spouse does not get along with the parent(s) of the other does not constitute grounds for separation. See Rittiner v. Sinclair, 374 So.2d 680 (La.App. 4th Cir. 1978).
While it is shown that the wife, like the husband, “accepted” in the broadest sense the perhaps unwanted advice and chastisement and the largesse of her parents (such as the payment of two months rent), it is not shown that either offering was solicited and encouraged moreso by the wife than by the husband.[2] Even if this be arguably deemed to be “interference” or fault on the part of the parents, that fault is not always and automatically visited upon the child. That child’s fault (siding with his or her parents or encouraging “interference”), as a ground for separation, must be shown by the complaining spouse of that child. It has not been shown here.
Admittedly, the wife did not prepare supper every night for her husband and did not maintain a spotless apartment. The *512 husband, however, acknowledges that she did cook supper about twice a week. He complained to her about the way she cooked. It is also preponderately shown that she almost daily made up the bed and occasionally did some other housecleaning work in the apartment. The condition of the wife may be found to attenuate her failure to achieve the housekeeping and homemaking perfection desired of her by the husband. Gipson v. Gipson, 379 So.2d 1171 (La.App. 2d Cir. 1980). Considering this wife’s age, inexperience, and her pre- and post-partum condition during the short existence of the husband and wife relationship, we must find that the trial court erred in concluding that she, too, was guilty of independent fault under these circumstances.
The lawful cause sufficient to defeat a claim for abandonment was defined in Quinn, supra, as follows:
“Lawful cause justifying withdrawal from . . . the common dwelling is substantially equivalent to a cause giving the withdrawing spouse grounds for a separation under CC 138. Mere friction, dissatisfaction or incompatibility, however intense, are not enough to constitute lawful cause.” 412 So.2d at p. 652.
The wife’s conduct here did not afford the husband cause to abandon his wife or grounds for a separation under CC 138. Moreover, the husband refused the wife’s requests that he return to the marriage.
Under these circumstances, we find that the trial judge erred in finding the wife mutually at fault and we amend the judgment insofar as it finds the wife to be at fault. The husband’s conduct constitutes sufficient grounds for a separation in favor of the wife for abandonment, without cause, and we affirm the judgment insofar as it relates to the husband’s fault. The judgment is amended to grant the separation in favor of the wife, the pendente lite awards are continued, and as thus amended and at the cost of the appellee-husband, the judgment of separation is affirmed.
AMENDED, RECAST, AND AFFIRMED.

. The wife became ill after the husband and his parents left the apartment on that Sunday night. She was taken to the emergency room of a hospital where she was treated and given a *511 sedative. She then spent the rest of that night with her parents but returned to the apartment and stayed there for several hours on Monday afternoon, awaiting, she said, the possible return of her husband.

. From his father-in-law, the husband asked for an increase in pay to make “ends meet”, borrowed money to pay installment notes, and accepted other things such as the payment of two months rent on the apartment. The wife occasionally asked her father for money for groceries and gasoline and on one occasion asked her grandmother for grocery money.
The husband gave the wife iess than $200 during the marriage to run the household, and explained that there was no “need” to give her money when he knew she could get it from her parents.