457 So.2d 165 (1984)
Beulah Grace Hamner HIGGINBOTHAM, Plaintiff-Appellant,
v.
Jesse Woodrow HIGGINBOTHAM, Defendant-Appellee.
No. 16460-CA.
Court of Appeal of Louisiana, Second Circuit.
September 26, 1984.
*166 Love, Rigby, Dehan, Love & McDaniel by Samuel P. Love, Shreveport, for plaintiff-appellant.
J. Stacey Freeman, Bossier City, for defendant-appellee.
Before PRICE, MARVIN and SEXTON, JJ.
SEXTON, Judge.
Beulah Grace Hamner Higginbotham originally sought a separation from her husband, Jesse Woodrow Higginbotham in a petition alleging adultery, abandonment and cruel treatment. Mr. Higginbotham reconvened, claiming he was entitled to a separation on the basis of cruel treatment. Testimony was heard and the case was continued. In the interim, Mr. Higginbotham filed a petition for divorce based on the allegation that the couple had lived separate and apart in excess of one year. The matters were consolidated for trial. Fault was litigated to determine Mrs. Higginbotham's right to permanent alimony. The trial court granted the divorce with a further finding that both parties were at fault in the dissolution of the marriage. Mrs. Higginbotham appeals that portion of the judgment which finds her guilty of alimony-precluding fault under Civil Code Article 160, complaining that the trial court erred factually as well as legally. We affirm.
The trial judge found Mrs. Higginbotham to be at fault based on two separate incidents in which she threatened her husband with a gun, once after having attacked him and beat him with a telephone. The testimony at the hearing was in conflict as to these two incidents. Mr. Higginbotham testified that one incident occurred in April of 1982 as he sat in his recliner making business calls to his employees. He stated that as he replaced the telephone, Mrs. Higginbotham picked it up and struck him with it on his arm and head, breaking his watch, and bruising his arm. Mr. Higginbotham testified that after this incident, he was taken to the hospital for treatment of a "heart flare up." Later that evening, Mr. Higginbotham said that his wife threatened him with a .22 caliber pistol. After relieving his wife of the gun, he retreated to the bedroom and locked the doors. Mrs. Higginbotham denied that she ever attacked her husband with the telephone or threatened him with the gun.
The second incident occurred in a parked car in front of the Brass Rail Lounge in Bossier City, Louisiana. According to Mr. Higginbotham, as he got into the car, he saw a gun in his wife's hands. Mr. Higginbotham stated that he was afraid that his wife would shoot him. He was eventually able to wrest the gun from her.
Mrs. Higginbotham's version of the Brass Rail Lounge incident is different. She stated that she saw her husband, a female companion, and the woman's daughter having drinks at the lounge. She testified that after having a drink with the group, she left. She later returned to find her husband and his friends gone, but his station wagon still parked in the lounge parking lot. Mrs. Higginbotham got in the station wagon and waited. She stated that when the trio returned, the woman's daughter was driving, and Mr. Higginbotham and his female companion were kissing in the front seat. Mrs. Higginbotham testified that when Mr. Higginbotham saw her in the station wagon, he became angry. She stated that she reached for the gun, which was kept in the glove compartment, but Mr. Higginbotham hit her. According to her testimony, the *167 gun then fell on the floor. She picked it up and returned it to the glove compartment.
Mr. Higginbotham's version of the events was corroborated by two witnesses. Mr. Higginbotham's daughter, Sue Reynolds, testified that her stepmother told her that she had threatened to kill her father. According to this witness, Mrs. Higginbotham described the telephone incident to her and told her that she had pulled a gun on her father which had to be taken away from her. Mrs. Reynolds also testified that Mrs. Higginbotham told her that she threatened Mr. Higginbotham with a gun at the Bossier City lounge. Another witness, a co-worker of Mrs. Reynolds, stated that she heard Mrs. Higginbotham telling Mrs. Reynolds about throwing the telephone at Mr. Higginbotham and threatening him with the gun.
When a husband obtains a divorce on the ground of voluntary separation, a wife is entitled to alimony only if she is free from fault, and is without sufficient means of support. LSA-C.C. Art. 160; LeBlanc v. LeBlanc, 362 So.2d 568 (La.1978). To constitute fault, a wife's misconduct must not only be of a serious nature but must also be an independent contributory or proximate cause of the separation. Pearce v. Pearce, 348 So.2d 75 (La.1977). Fault for purposes of permanent alimony preclusion is synonymous with the fault grounds for separation and divorce under LSA-C.C. Arts. 138 and 139. The party seeking alimony bears the burden of proving freedom from fault in order to be entitled to alimony following divorce. Moore v. Moore, 393 So.2d 822 (La.App. 2d Cir. 1981); Brannon v. Brannon, 362 So.2d 1164 (La.App. 2d Cir.1978).
The question of a party's fault under the statute providing for alimony when a spouse has not been at fault and has not sufficient means for support is a factual one. A trial court's finding of fact on the issue of fault will not be disturbed unless found to be manifestly erroneous. Pearce, supra.
Cruel treatment in any form which renders living together insupportable is a legal ground for separation from bed and board. LSA-C.C. Art. 138. For a person to live in fear of bodily harm is such cruel treatment as to render living together insupportable and to support a claim of separation from bed and board. Seymour v. Seymour, 423 So.2d 770 (La.App. 4th Cir. 1982). In Dejoie v. Dejoie, 224 La. 611, 70 So.2d 398 (1954), the Supreme Court held that a wife's action of firing a pistol in the presence of her husband in order to frighten him constituted cruel treatment entitling him to a separation from bed and board. Accord, Amos v. Amos, 232 La. 178, 94 So.2d 23 (1957).
The initial fault on the part of one spouse which would render further marital relations insupportable may provoke some reasonably justifiable response on the part of the other spouse. A response by the other spouse in this context, however, is not fault within the meaning of Civil Code Article 160 which will preclude permanent alimony. Bruner v. Bruner, 364 So.2d 1015 (La.1978); Vail v. Vail, 390 So.2d 978 (La.App. 2d Cir.1980).
In this case the trial court also found Mr. Higginbotham at fault in the dissolution of the marriage because of his close relationship with another woman. Mrs. Higginbotham strenuously argues, with reliance upon Vail, supra, that her actions were a justifiable response to this provocation by her husband. Evidence adduced at the hearing revealed that Mrs. Higginbotham engaged in amateur sleuthing activities, such as constantly following Mr. Higginbotham and his female friend and photographing them. The trial judge noted in his reasons for judgment that many of Mrs. Higginbotham's actions could be explained as a justifiable response to her perception of her husband's adulterous relationship. However, he found that the two incidents involving threats on Mr. Higginbotham's life constituted independent contributory fault on her part. We agree. Such physical violence and threats do not constitute "justifiable responses" to *168 her husband's fault. We find that the facts and circumstances of this case present a sufficient showing of cruel treatment by Mrs. Higginbotham with respect to her twice threatening her husband's life with a firearm, as well as attacking him physically. The trial court's ruling finding Mrs. Higginbotham guilty of alimony barring fault is adequately supported by the record. As such, we find no manifest error in the trial court's conclusion that Mrs. Higginbotham was at fault. The judgment of the trial court is accordingly affirmed.
AFFIRMED.