477 So.2d 798 (1985)
Lauretta DAIGLE (Wife of Rickey Raymond Breaux)
v.
Rickey Raymond BREAUX.
No. 85-CA-238.
Court of Appeal of Louisiana, Fifth Circuit.
October 10, 1985.
Fred P. Westenberger, New Orleans, for plaintiff-appellant.
Richard G. Steiner, Gretna, for defendant-appellee.
Before BOUTALL, CURRAULT and DUFRESNE, JJ.
CURRAULT, Judge.
This appeal originates in the Twenty-Fourth Judicial District Court, Division "O", for the Parish of Jefferson, wherein the Honorable Ronald P. Loumiet rendered judgment granting a divorce between the parties but denying the wife's request for permanent alimony based upon a finding that she was not free from fault. We amend in part and affirm as amended.
*799 Rickey Raymond Breaux and Lauretta Daigle Breaux were married on September 1, 1972, and of this marriage three children were born. On May 2, 1983, Mrs. Breaux filed a petition for separation alleging Mr. Breaux had abandoned the matrimonial domicile. A judgment awarding Mrs. Breaux custody of the three children together with child support in the amount of Four Hundred Dollars ($400) per month and alimony pendente lite in the amount of Three Hundred Twenty-Five Dollars ($325) per month was then entered August 16, 1983.
On April 16, 1984, Rickey Breaux filed a petition for divorce based upon one year living separate and apart. Mr. Breaux, alleging his wife to be at fault in their separation and divorce, asked that alimony be terminated and that joint custody be awarded. Mrs. Breaux answered her husband's petition denying she was at fault and reconvened, alleging Mr. Breaux had been involved in an adulterous relationship since their separation.
A trial was held July 20, 1984, and judgment was rendered as follows: a divorce a vinculo matrimonii between the parties on the ground of one year living separate and apart was granted; Mrs. Breaux was found not to be free from fault in causing the separation of the parties; Mrs. Breaux's reconventional demand for an immediate divorce based on adultery was dismissed; alimony pendente lite was terminated; however the previously awarded child support, custody and visitation rights were maintained.
Mrs. Breaux appeals that judgment asserting as error the following:
that (1) the trial court erred in finding appellant was not free from fault, thus denying her permanent alimony; and that
(2) the trial court erred in terminating alimony pendente lite prior to the judgment of divorce becoming final.

FAULT
As to fault, the trial judge made the following closing remarks, "I will not hold that she was without fault. She is with fault as he is." The issue then is whether there is sufficient evidence to preclude alimony based on the wife's fault.
Appellee filed his petition for divorce alleging as fault on the part of the appellant the following:
"Defendant would not let petitioner go hunting or fishing or anywhere with his male friends. She said these people would influence his life. Defendant is a religious fanatic and told petitioner if he quit church he could leave. Defendant and petitioner would go to church two times on Sunday, each Tuesday, Wednesday and Thursday, and sometimes on Friday. When petitioner reduced his participation in church, defendant consistently threatened petitioner that she would not live with him and would throw him out if he ever quit church."
In her answer to appellee's petition for divorce, appellant denied all of the above allegations.
It is evident from the record that this marriage of eleven years had turbulent times early on. Apparently those problems reemerged as appellant testified she was not going to put herself and her children through it [problems] again. Approximately two years prior to their separation, a decision was reached that the parties would attend the Assembly of God Church in Marrero in order to "try and make [their] marriage correct."
Appellant and appellee then began a routine that included the attendance of six church functions over a period of five days. These functions consisted of: Sunday worship servicesmorning and evening; Tuesday evening Bible study; Wednesday evening worship services; Thursday evening church band practice; and Friday evening traveling to other churches for band performances.
Appellee testified that although he wanted to save his marriage, it was appellant who suggested they go and in fact "kept pushing [him] into the church." Appellee stated, "... she drug me with her to try to make me happy and make her happy." Appellee further stated that appellant told *800 him, "she did not want me living in her house if I didn't go to church...."
Appellant denied she told appellee she would leave or ask him to leave if he discontinued his church activities. Regarding appellee's attendance at the religious functions, appellant stated, "I have never forced him. You can't force a grown man. It was free will ... he voluntarily went every time. It was not against his will."
Appellee testified that "after a while" he realized that he no longer wished to be heavily involved in church activities and preferred to pursue his own interests such as hunting and fishing. He testified he informed appellant of his desire to reduce his church activities and begin his own activities. Appellee stated he then reduced his church involvement but that he did not go on any hunting or fishing trips as appellant would not let him go, "because she said that you cannot mix light among darkness. In other words, people that don't go to church."
Appellee later testified that eventually he did go on a few hunting trips, but that these trips were restricted to single day hunts and did not involve overnight stays. Even with these limited excursions, appellee stated appellant would give him "the third degree" upon returning home and threatened him if late. He further stated that on one occasion appellant flew into a rage when he arrived home late and threatened him with a gun.[1] Appellee stated this treatment was due to his keeping company with sinners.
Appellant testified she never objected to appellee's hunting trips or his reduced church involvement. She further stated she never threatened appellee with or without a gun.
The record indicates that just prior to their separation, appellee began requesting hunting trips requiring overnight stays. It is also evident that on several occasions after reducing his church involvement, appellee lingered after work and did not return home until late. Both parties agree when the separation occurred, but their versions differ substantially.
Appellee testified that upon returning home after work, he was questioned whether he was going to church that particular night. According to appellee, when he told her he was not going that night, she told him she did not want him to be like he was five or six years past; she was not able to live with him; and demanded he pack his things and move out.
Appellant's version is as follows:
"The night he left he told me that he was leaving. He said it was his fault. He said it had nothing to do with me. He had a problem and he said he was going to be leaving because it was the best thing to do for him, me, and the children."
Fault which denies permanent alimony to the claimant spouse was dealt with succinctly in Higginbotham v. Higginbotham, 457 So.2d 165, 167 (La.App. 2d Cir.1984) wherein that court stated:
"When a husband obtains a divorce on the ground of voluntary separation, a wife is entitled to alimony only if she is free from fault, and is without sufficient means of support. To constitute fault, a wife's misconduct must not only be of a serious nature but must also be an independent contributory or proximate cause of the separation. Fault for purposes of permanent alimony preclusion is synonymous with the fault grounds for separation and divorce under LSA-C.C. Arts. 138 and 139. The party seeking alimony bears the burden of proving freedom from fault in order to be entitled to alimony following divorce." (Citations omitted)
One ground for separation is cruel treatment that is of such a nature as to render the spouses' living together insupportable. LSA-C.C. Art. 138(3). Cruel treatment has been applied to a myriad of situations and interpreted to include spouses who have *801 religious zealousness and spouses who, armed with a gun, threaten the other.
The wife's action of firing a pistol in the presence of her husband in an attempt to frighten him has long been recognized as cruel treatment entitling him to a separation from bed and board. Dejoie v. Dejoie, 224 La. 611, 70 So.2d 398 (1954); Amos v. Amos, 232 La. 178, 94 So.2d 23 (1957). More recently, in Higginbotham, supra, the wife twice threatened her husband's life with a firearm. In finding the wife guilty of fault sufficient to constitute cruel treatment, the court concluded, 457 So.2d at 167, "For a person to live in fear of bodily harm is such cruel treatment as to render living together insupportable and to support a claim of separation from bed and board."
The religious zealousness of a spouse has long been recognized as cruel treatment warranting separation. Krauss v. Krauss, 163 La. 218, 111 So. 683 (1927). In Krauss, the husband was found guilty of fault constituting cruel treatment when he, in "attention to the pursuit of new and strange religious teachings", gave up his work and friends, requiring his wife to do likewise which caused her humiliation, mental distress, and loss of ordinary pleasures. The Supreme Court, 111 So. at 685, concluded:
"We must hold therefore that any unjustifiable conduct on the part of either husband or wife which so grievously wounds the mental feelings of the other, or such as in any other manner utterly destroys the legitimate ends and objects of matrimony, constitutes cruelty, although no physical or personal violence may be inflicted or threatened."
More recently, in Bennett v. Deweese, 398 So.2d 16 (La.App. 4th Cir.1981), the court reversed a trial court's finding that the wife "was not free from fault" based on her religious zealousness. Mrs. Bennett became involved with the Westwego Assembly of God Church and Mr. Bennett averred she became "obsessed with religion."
The Fourth Circuit Court recognized and found appropriate the rationale expressed in Krauss, supra. However, the trial court was reversed, without a finding of manifest error, with the court concluding, 398 So.2d at 20:
"The record is totally barren of any effort made by him to signify his objection to his wife's religious persuasion and/or endeavors until shortly before they separated and after he had determined that they were a source of embarrassment to him, had a disrupting influence upon his family life, and had already come to the conclusion that he no longer loved her.... When the objection was finally made he declined counseling and soon thereafter departed the home. We find that he has failed to prove legal fault on the part of Mrs. Bennett."
As to a finding of fault, Higginbotham, 457 So.2d at 167, stated:
"The question of a party's fault under the statute providing for alimony when a spouse has not been at fault and has not sufficient means for support is a factual one. A trial court's finding of fact on the issue of fault will not be disturbed unless found to be manifestly erroneous."
Therefore, in order to reverse the trial court, we must find manifest error in its determination that the wife was not free from fault, which fault was sufficient to constitute cruelty.
Appellant has not shown, to the satisfaction of this court, nor can we see where the trial court's conclusions regarding the wife's fault were manifestly erroneous. Although the only testimony as to fault was given by the parties, and each contradicted the other, the trial judge is in a much better position to weigh each party's credibility than this court, and we refuse to disturb such an important finding as fault unless such finding is manifestly erroneous.
We are not stating that religious zealousness can be the basis of a fault finding under any facts. Any finding of fault *802 based on religious zealousness is to be done on a case-by-case basis. However, when dealing with cruel treatment and the determination of whether such treatment is sufficient to constitute fault, we find helpful the following idea expressed in Krauss, 111 So. at 685:
"The courts will look, not so much to the originating cause of the cruel treatment, but to the nature and character of the treatment itself in determining the question as to whether it amounts to such cruelty as to warrant a separation."

ALIMONY PENDENTE LITE
The trial court terminated appellant's alimony pendente lite of Three Hundred Fifty Dollars ($350) per month upon the signing of the judgment of divorce. "Alimony pendente lite awarded by judgment on a rule in a separation proceeding continues to accrue pending the final disposition of any appeal from that proceeding or divorce decree subsequently rendered in connection therewith." Bateman v. Larson, 452 So.2d 186 (La.App. 4th Cir.1984). Appellant's alimony pendente lite must be reinstated and continued until final disposition of this matter.
Accordingly, for the above stated reasons, the judgment of the trial court is affirmed as to the finding of fault on the part of appellant, but is amended as to the termination of appellant's alimony pendente lite which is hereby reinstated retroactively and continued until final disposition of this matter. Costs of this appeal are assessed equally to appellant and appellee.
AMENDED AND AFFIRMED AS AMENDED.
NOTES
[1] We note, however, that when appellee again related his version of this incident he stated, "she was very furious and she threatened to she said if she had a gun she would shoot me."