MOISE, Justice.
 

 In each of these consolidated cases, the plaintiffs seek a judgment of separation of bed and board. The plaintiff husband, Prudhomme Dejoie, Jr., sought a judgment on the ground of cruel treatment. The wife, Carolyn Barnes Dejoie, prayed for a separation on the ground of abandonment. On trial, after issue joined, the district court dismissed Prudhomme Dejoie’s suit ■and gave judgment to the wife for a separation of bed and board, alimony of $180 per month, and custody of the minor children born of the marriage. It is from these judgments that the husband, Prudhomme Dejoie, Jr., prosecutes this appeal.
 

 The question posed for determination is on what side the doctrine of reasonable certainty should prevail.
 

 The home life of this couple was not happy. There was constant bickering and fault finding. July 29, 1952 was the date of the principal complaint made by the husband. The record discloses that at this time the wife was to become a mother within approximately six weeks. On the named date, the couple had a heated quarrel. The wife fired a shot from her husband’s pistol which penetrated the breakfastroom wall. She alleges that she was depressed, and that her condition was aggravated by a hostile husband who absented himself from home nine months of the year.
 
 [1]
 
 She claims that the remaining three months of the year, he worked for the family corporation. Carolyn Dejoie presents to the court a picture of herself as a neglected wife who had come to the end of her ropes, and it was her intention to commit suicide. She testified that her husband was in the upstairs bathroom, the door being closed, at the time she fired the dangerous weapon, and that he rushed out of the bathroom after the shot was fired
 
 *616
 
 and asked her if she -were crazy. A few minutes later, she states, he said that he loved her and would endeavor to do better. She testified that she put the gun away and has not touched it since that time.
 

 As to the actual happening and what transpired in the Dejoie residence at that time, no eye has seen it, and no ear has heard it except the litigants themselves. We must therefore judge from the substantial unity of the corroborating circumstances.
 

 The husband swears that after a quarrel in the bedroom on the morning of July 29, 1952, he went down to the kitchen, and a few moments later, his wife called him, and when he arrived at the foot of the stairs, she fired the gun. After firing, he states, she told him that she was going to kill him, and he left the household through the back door. He states that thereafter he called his wife’s mother and requested that she come to stay with her daughter. He says that he did not mention the shooting. He testifies that he moved downstairs in a basement apartment. He states that he removed the gun from the house and locked it in the trunk of his car. Around the middle of August, 1952, appellant says that he loaned his car to his wife while her car was being greased, and later, he discovered the gun was missing from the trunk. Later, he states, he found it in his wife’s personal possessions. On August 17, 1952, he left the marital domicile. The husband is emphatic in his testimony that his wife both shot at him and threatened him.
 

 Mrs. Faviola Thornhill, whose husband was employed as an auditor for the Louisiana Life Insurance Company, a company controlled by appellant’s relatives and who was also a friend of Carolyn Dejoie, testified that the wife told her of the shooting, stating that she intended to frighten her husband and not to kill him.
 

 Dr. Rivers Frederick, grandfather of the appellant, testified that his granddaughter-in-law discussed the shooting with him a few days after it occurred, telling him that she only wanted to frighten her husband. He said that she requested his help in patching up the marriage.
 

 Alice M. Barnes, appellee’s mother, stated that the appellant husband told her of the episode, and even though she found it hard to believe that her daughter would do such a thing, she took her son-in-law’s word for it.
 

 We are of the belief that the wife fired the shot to frighten the plaintiff husband while in her presence, and we do relieve her from the imputation of a felonious intent. However, we are here to determine a case at law. The word “Right” and the word “Wrong” which are used in decisions are not expressions of an arbitrary will. They have an ominous meaning when applied to describe an act in the light of consequences as to the condition of mind such act might produce. Here,
 
 *618
 
 we find that there was a firing of a death producing instrumentality, a “Wrong.” The wife selected that weapon to frighten an alleged recalcitrant husband to a more sympathetic understanding. It would be a bad eminence and a dangerous precedent for a court of law to condone such an act'. The wife knew her motive in firing, but the husband did not. To live in a house in fear of bodily harm is such cruel treatment as to render living together insupportable. Article 138, LSA-Civil Code.
 

 “The jurisprudence is well established that cruel treatment in any form which renders married parties living together insupportable is a legal ground for judicial separation in favor of the mistreated one.” Mudd v. Mudd, 206 La. 1055, 20 So.2d 311; McCarty v. Stelly, 145 La. 456, 82 So. 411.
 

 “There is no rule of law requiring that there be more than one single instance of cruel treatment, to justify a decree of separation from bed and board.” Sliman v. Sliman, 155 La. 397, 99 So. 343, 345; Schneider v. Schneider, 214 La. 759, 38 So.2d 732.
 

 Under the circumstances, we think that the husband had a right to leave his wife, and it cannot be said that he abandoned her. Spansenberg v. Carter, 151 La. 1038, 92 So. 673; Moore v. Moore, 192 La. 289, 187 So. 670.
 

 Even though the husband remained at home two weeks after the shooting episode and visited his children after leaving, we do not believe that there was any con-donation.
 

 The appellant worked for a family owned corporation. He testified that his salary was recently cut from $605 a month to $250, and that he is unable to pay his wife alimony of $180 per month. Here the husband “bloweth where he listeth.”
 

 An examination of the record shows that appellant is well able to pay $180 alimony per month. It is always within the province of the trial court to change alimony judgments upon a proper showing that a party has suffered a change of income. Colby v. Colby, 200 La. 321, 7 So.2d 924.
 

 For the reasons assigned, the judgment of the trial court dismissing the suit of Prudhomme Dejoie, Jr., Suit No. 41,277, and the judgment of the trial court granting a separation from bed and board on the ground of abandonment to Carolyn Dejoie, Suit No. 41,278, are reversed and set aside. It is now ordered that Prudhomme Dejoie be given a separation from bed and board from Carolyn Dejoie on the ground of cruel treatment; it is further ordered that the judgment of the trial court ordering Prudhomme Dejoie, Jr., to pay Carolyn Dejoie and children alimony of $180 per month and granting Carolyn Dejoie custody of the minor children born of the marriage be affirmed. All costs to be paid by plaintiff, Prudhomme Dejoie, Jr. Affirmed and reversed in part.
 

 [1]
 

 . It is shown that the husband was a law student at Southern University, Seotland- , ville, La. '