FOURNET, Chief Justice.
The plaintiff, Carrie Crawford Amos, prosecutes this appeal from a judgment dismissing her suit against her husband, Grover C. Amos, for separation from bed and board,[1] and awarding him a judgment of separation on his reconventional demand.[2]
Counsel representing appellant contends the judgment is erroneous for (1) the “evidence and probabilities” of the case are with the plaintiff while (2) appellee’s evidence is unsupported and uncorroborated and reeks with improbability; in the alternative (3), that if plaintiff does not prevail, then it should be held “neither party proved her or his case with a reasonable preponderance of evidence,” and the suit should be dismissed both as to the original and the reconventional demand. A perusal of the record will readily disclose that counsel cannot find support therein for his contention. Plaintiff rested her case upon her own uncorroborated testimony, which is not very impressive. The only other witness produced by her, a-daughter by a previous marriage, stated most emphatically she knew nothing whatever of the status of affairs between the plaintiff and defendant, never having been present during any of their purported quarrels. The only testimony she gave that might be considered favorable to the plaintiff was that defendant sought her help in having the plaintiff placed in a mental institution, but this was not one of the causes for separation alleged in the petition. Additionally, the testimony of the plaintiff is not only contradicted by the husband in every material aspect, but he is fully corroborated on many important phases by the plaintiff and by her daughter, as well as by the testimony of-two disinterested witnesses and a daughter of his by a previous marriage.
*181 We find from the record that both of the parties had been previously married and, at the time of the trial, the wife was 50 while the husband was around 61. They were married in 1949 and lived together— apparently in the same quarters she occupied prior to the marriage — until the incident of June 19, 1954, which culminated in their separation. Both were employed, the husband holding down four jobs at which he worked about 18 or 20 hours a day, i. e., a full-time job at the post office that required him to leave home around three in the morning, and three part-time jobs, — insurance agent and collector, preacher, and newspaper routeman. Much of the trouble between them seems to have stemmed from the fact that the defendant refused to sleep in a room away from the plaintiff so that she could get her rest; that in attempting to hold down four jobs the defendant was away from home much of the time; and that because of his part-time work as an insurance agent he received many calls plaintiff thought should have been directed to the office since she received no pay for answering them.
As pointed out in the first footnote above, the allegations are, for the most part, general in character-. The only particularized cause for the separation is the incident of June 19, 1954, when, plaintiff claims, her husband struck her with his fist while they were having an argument. This incident also forms the basis of defendant’s reconventional demand, his averments being that on this occasion his wife shot at him with a gun.[3]
On direct examination the plaintiff made no mention of the shooting until led by counsel, stating simply that on the night of June 19, after she had fixed her husband’s supper, they got into an argument and he struck her with his fist and left the house, returning later with two police officers. It was only when led by counsel that she added her husband had picked up a vinegar bottle[4] and that she "shot at him to scare him” when he drew back like he was going to hit her. (Emphasis supplied.)
On the other hand, the husband’s version of what occurred at this time is that when he arrived home on the night of June 19 his wife began arguing with him, the argument continuing through supper and while he was undressing for bed. When he knelt to say his prayers, she ordered him to get up off his knees, stating he was “going to judgment” that night. All during this time she was armed with a gun, which she had in her pocket, her purpose being to taunt him into doing something that would give her a cause to kill him in *183 self-defense. To this end she not only threw a bottle at him, hitting him in the head, but threatened him with another, spit in his face, and stepped on his toes. As he attempted to get in bed when she told him not to, she shot at him.[5]
 It is clear from her own statement that she shot at her husband to scare him, not in self-defense, not being, at the time, in fear of her life. Having reached this conclusion, the holding in Dejoie v. Dejoie, 224 La. 611, 70 So.2d 398, is controlling, although the facts are not absolutely identical. We do not deem it necessary, therefore, to further detail and analyze all of the remainder of the testimony in the record for the purpose of pointing out the various discrepancies in the version of the wife and the corroboration given the husband.
From the foregoing it is obvious that we are not justified in anywise disturbing the conclusion of the trial judge.
The judgment appealed from is affirmed, at the cost of appellant.
HAMLIN, J. ad hoc., recused. ■

. The allegations of the petition are, for the most part, general, and to the effect that the plaintiff was mistreated mentally and physically in that she was denied love and affection and subjected to contempt and sarcasm as well as to telephone calls from other women; not supported adequately; and struck with fists and a hammer. The only particular allegations have reference to events occurring on the night of June 19, 1954, when, plaintiff asserts, the defendant struck her with his fist and threatened her with a bottle. It was on this night the separation occurred which forms the basis of the action.

. In his answer the defendant, in addition to denying categorically plaintiff’s allegations, except such as were qualified by his answer, reconvened, seeking a separation on the ground that his wife had made an attempt on his life, deliberately shooting at him on the night of June 19, 1954, with a gun.

. There is no mention of the shooting incident in plaintiff’s petition.

. She first stated the bottle was on the sink and then, under correction by her counsel in his question, that it had been on the table.

. The defendant also testified, in accordance with Ms answer, that his wife shot at him several months previous thereto, in April of 1954, and although plaintiff denied the shooting, she did state she told her husband at that time she was going to “hurt him” if he hit her again with his fist. Yet under cross-examination she admitted be had not then hit her wi:h Ms fist, and, when pressed, she could not even remember when he had last hit her, stating that in her estimation it had been “About two summers ago, I imagine.” (Emphasis supplied.)