146 So.2d 296 (1962)
Christine ST. JULIEN, Plaintiff-Appellee,
v.
Rubria LeBLANC, Defendant-Appellant.
No. 660.
Court of Appeal of Louisiana, Third Circuit.
November 5, 1962.
*297 Fournet & Adams, by Robert J. Adams, McBride & Brewster, by William L. Brewster, Lafayette, for defendant-appellant.
Domengeaux & Wright, by Fredric Hayes, Lafayette, for plaintiff-appellee.
Before FRUGÉ, SAVOY and CULPEPPER, JJ.
SAVOY, Judge.
Plaintiff filed suit against her husband for a judicial separation on the grounds of cruel treatment, and for alimony.
On the trial of the rule nisi, the rule was made absolute, enjoining the defendant from disposing of the community property *298 and awarding plaintiff alimony pendente lite in the amount of $50.00.
Defendant filed an answer to the suit, generally denying all the allegations of plaintiff's petition, and then, assuming the position of plaintiff-in-reconvention, alleged habitual intemperance, excesses and mental and physical cruel treatment on the part of his wife, and asked for a judicial separation against her on these grounds.
Plaintiff filed an answer to the reconventional demand, denying all of its allegations.
After trial on the merits, the district court rendered judgment in favor of plaintiff, awarding her a judicial separation on the grounds of cruel treatment and alimony in the amount of $60.00 per month and rejected the reconventional demand filed by defendant. The final judgment did not dispose of the other demands set forth in the plaintiff's petition.[1] The defendant has appealed to this Court.
The defendant maintains that the district court erred in the following particulars:
"A. The court erred in not finding that plaintiff threatened defendant's life with a knife.
"B. The court erred in finding that plaintiff was removed from the marital domicile by a deputy sheriff.
"C. The court erred in awarding any alimony."
Plaintiff maintains that the evidence supports the findings of the district court, and the judgment should be affirmed.
There is a conflict in the testimony of plaintiff and defendant concerning the facts leading up to the separation.
Plaintiff testified that she had always taken care of the cooking, washing and other housework, and had never given her husband any cause for cruel treatment. She stated that she was home all day on July 24, 1961, but did not know the whereabouts of her husband. She cooked the noon meal as usual, but the defendant did not come home at noon. Her nephew, Lawrence Begnaud, was in town and came by for dinner. She testified that around 4:30 P.M. her husband came home, was mad and fussing, and began cursing her and calling her names, and wanted to fight; and that he grabbed a mop to beat her, but she would not let him hit her with it. She testified he said that he wanted her to leave and was going to call the law to put her out of the house if she did not leave. Then, he called for his brother, who lived next door, and they went to a Billup's Service Station to call the sheriff's office. She testified that when a deputy sheriff arrived, her husband asked him to put her out of the house, since he did not want her in the house any more. She then left with the deputy sheriff who took her to her sister's home. She insisted that she was cooking supper when her husband came home and denied that she had a knife in her hand.
The defendant testified that he and his wife had not gotten along for quite some time, and that she cooked so little, he usually ate at his mother's home, and he usually had to send his clothes to the laundry because this was easier than talking her into doing the washing. He said she drank to excess, but he did not know whether she was drinking or sobering up on July 24, 1961, at the time the deputy sheriff came to the house, since he had been out that day, although he found an empty scotch whiskey bottle after they left. He testified that his wife, who had been "raising cane" for about three days, met him at the back door with a butcher knife, and wanted to cut him. He said he backed out of the door, hit and cut his mouth on the screen door in some way, and called *299 his brother. They went to a service station where he called the sheriff's office. He admitted saying he wanted her out of the house for his protection. On cross-examination, he stated that he used a mop for protection when he saw she was going to cut him. He picked up the mop from the step next to the back porch. At the time his wife had the knife, she was behind a closed screen door.
The deputy sheriff, Charles Guilbeau, testified that he met the defendant at the Billup's Service Station, and they went to the defendant's home, where the defendant told his wife to leave the house, since he did not want her in the house any more. The defendant stated in his presence that they had had a fight and he was scared of plaintiff. The plaintiff appeared upset. He did not believe that either plaintiff or defendant had been drinking. After being asked to leave, the plaintiff asked him to take her to her sister's home in Coonville. Both parties were nice to him at the time, and there was no fussing between them in his presence.
Lawrence Begnaud, nephew of plaintiff, testified that he ate dinner at the defendant's home on July 24, 1961. He arrived there at about 12:10 P.M., at which time dinner was prepared, and he left around 1:00 P.M. He did not notice anything unusual.
Robert LeBlanc, brother of defendant, and next door neighbor for about 20 years, testified that he heard someone calling him, and found his brother at the fence, bleeding at the mouth. He saw the plaintiff in the kitchen "with something like a knife in her hand". He told his brother that he would not let him go back into the house and get killed, and took him to the service station to wash off his face. The sheriff's office was called, and they returned to the home, but he did not go back into the defendant's house. He testified that plaintiff and defendant had quarreled before and had minor misunderstandings, but never as seriously as on this day. He testified that he had seen plaintiff drink, but never in excess, and he did not believe either party was drinking that day. He stated that he was not positive he saw a knife in plaintiff's hand, as he only saw what looked like a knife, a flash of steel.
The district court determined that both parties had alleged exaggerated claims, which were not supported by proof, and that the evidence did not support the respective charges of threats upon the lives of each other. The court noted that the home life of the parties had not been agreeable for several years, and believed that the intemperances between the parties were approximately equal. However, the district court concluded that the evidence did prove that plaintiff was removed from the home by a deputy sheriff at the request of the husband, and that this forceful removal constituted sufficient cruelty to grant the plaintiff a judicial separation.
Defendant maintains that the evidence corroborates his claims, rather than those of plaintiff, and urges that the evidence shows that the defendant was put in fear of his life, as in the cases of Dejoie v. Dejoie, 224 La. 611, 70 So.2d 398, and Amos v. Amos, 232 La. 178, 94 So.2d 23.
In each of those cases, the court found that the wife had shot a pistol to scare her husband, at a time when she was not in fear of her own life. However, in the instant case, defendant has not proved his wife attacked him with a knife. There were no eye witnesses, the wife denies having a knife in her hand, and the plaintiff's only corroborating witness, his brother, only saw a flash of steel from her hand as she stood in the kitchen, and would not testify positively that she held a knife. It is noted that the defendant acknowledges that there was a closed screen door between them at the time of the accident.
After carefully examining the record, we agree with the finding of the district court that the defendant has not carried *300 the burden of proof on his charge that his wife attacked him with a knife.
Also, we find that the evidence supports the finding of the district court that the defendant had his wife removed from the house by a deputy sheriff, and we agree that this action constituted a sufficient basis for an award of judicial separation in her favor.
The last matter for determination is the question of alimony. In connection with this issue, the record shows the following facts.
The plaintiff is not employed and has no income, although she had worked during one period of the marriage about eight years before the trial. She has limited education and has not found employment. She owns an interest in inherited property, held in indivision with three sisters and a brother. She owns no other property, and testified that she has no means for her support. Since the separation from her husband, she has lived with relatives.
The defendant has arthritis and has not worked for approximately 22 years, since a time before his marriage to plaintiff. He owns separate property that has been developed into two subdivisions. His income is limited to the receipts from the sale of part of the separate property. He testified that he is receiving approximately $170.00 per month from the sale of lots to four different parties, and the unpaid balances due on these sales are declining. It appears that the defendant will have difficulty in selling additional lots from his subdivisions until approximately $4,700.00 is expended in developing the subdivisions to conform to certain banking loan requirements. Defendant has paid income tax only once, in 1961, when he paid income tax in the amount of $1,209.24. In 1961 the defendant sold a lot to a church for $9,600.00. He testified that he gave the church $1,000.00. On the day suit was filed, and before the restraining order was served on the bank, he withdrew $7,842.58 from his account, and left approximately $1,000.00 on deposit with the bank. He used all of the amounts withdrawn to pay debts, except approximately $800.00. He paid $3,000.00 to his brother, Robert LeBlanc, for a car that he had previously purchased; $2,300.00 to his cousin, Sidney Couret, for money previously borrowed to shell the streets in his subdivisions; $542.00 to his attorney for services over the past year or two; and $900.00 to take care of his part of his mother's funeral expenses. All of the debts of the defendant are now paid, except for an income tax liability due April 15, 1962, resulting from the sale to the church, which he estimated to be between $1,000.00 and $1,200.00 in his testimony at the trial of the rule nisi, and to be $3,000.00 in his testimony at the trial on the merits. Defendant itemized his monthly expenses at approximately $115.00, not including a reserve of $100.00 per month, which he considered necessary to set aside in order to pay the income tax liability.
The defendant has directed our attention to the fact that all of the evidence pertaining to plaintiff's needs and income and to defendant's ability to pay alimony was elicited during the trial of the rule nisi. Defendant maintains that this evidence is too stale to justify an award of alimony at the trial on the merits, some five months later, or in any event, it did not justify an increase in the amount of alimony from $50.00 to $60.00 per month.
We believe that it was proper for the district court to consider the evidence introduced in the prior proceedings in making an award for alimony at the time of the judicial separation, since the latter judgment was a continuance of a prior determination of a proper award of alimony. However, in order for the district court to support a modification of its original decree of alimony, there should have been additional evidence introduced at the trial on the merits showing a change in the financial condition of at least one of the parties since the time of the original decree. The burden of proof would rest on the *301 party who requested a modification of the original decree of alimony. Since no such evidence was introduced at the trial on the merits to support either an increase or decrease of the original award of alimony, the increase of alimony from $50.00 to $60.00 per month was improper, and the award should have been continued at $50.00 per month.
We now turn our attention to the defendant's contention that the right to alimony after separation, but before divorce, is derived from LSA-C.C. Articles 119 and 120, rather than LSA-C.C. Article 148, and that the test for an award for such alimony is whether or not the wife is in necessitous circumstances. Defendant maintains that plaintiff has not proved she was in necessitous circumstances, and in the alternative, that she has not proved her needs or his ability to pay alimony. Defendant also refers to the finding by the district court that defendant was receiving about $150.00 per month income by selling portions of his inheritance, and contends that the evidence does not show that the defendant has the means to support his wife. It is urged that since defendant is crippled and his wife is able to work, he should not be required to pay alimony for a limited time by selling the remainder of his property, thereby leaving himself in destitute circumstances, since it would not be equitable to pauperize an incapacitated husband in order to grant support to an able bodied wife.
On the other hand, plaintiff takes the position that alimony after a judicial separation, and until a divorce, is alimony pendente lite, and that the test to determine the wife's right to such alimony is derived from LSA-C.C. Article 148, and is whether or not she has sufficient income for her maintenance, rather than whether she is in necessitous circumstances as required after the divorce by LSA-C.C. Article 160. It is also maintained that, regardless of which test is used, the evidence is sufficient to justify the award of alimony as found by the district court.
Although possibly not within the express terms of LSA-C.C. Article 148, the plaintiff's contention is correct, in that alimony payable between the time of judicial separation and divorce has been characterized as alimony pendente lite by the Supreme Court, and the basis of the award of such alimony has been held to be whether or not the wife has sufficient income for her maintenance. Hillard v. Hillard, 225 La. 507, 73 So.2d 442; Smith v. Smith, 217 La. 646, 47 So.2d 32. A discussion of the articles of the civil code mentioned above is contained within the opinions of these two cases. It is noted that the defendant's position is discussed in the dissenting opinion in the Hillard case, supra. The decisions in these two cases were followed in the recent case of Shapiro v. Shapiro, (La.App., 4 Cir., 1962), 141 So.2d 448.
The question of whether a wife's earning capability should be considered in fixing alimony pendente lite was decided in the case of Bilello v. Bilello, 240 La. 158, 121 So.2d 728, wherein the court held that a wife is not required to go out into the arena of business in order to obtain funds necessary to support herself, although if she does choose to earn her own living, the income received will be considered in determining whether she has sufficient income for her maintenance.
Turning our attention to the evidence in the instant case, we find the record shows that plaintiff has no income from any source, and she is, therefore, clearly entitled to alimony. In fact, the record also shows her to be in necessitous circumstances.
In determining the amount of alimony, we should look to the wife's needs and the husband's ability to pay alimony. The district court found that the defendant's income was about $150.00 per month. The record shows that although the defendant has a large tax liability, he owes no other debts, and owns free of mortgages, *302 an automobile, a house and two partially developed subdivisions. Under these circumstances, we hold that defendant is able to pay his wife alimony in the amount of $50.00 per month.
Although the record does not disclose with particularity the needs of the plaintiff, except for housing of $40.00 per month, considering the record, we find that an alimony award of $50.00 per month is justified, and is certainly not excessive.
For the reasons assigned, the judgment of the district court is amended by reducing the award of alimony from $60.00 per month to $50.00 per month. In all other respects, the judgment is affirmed. Costs of this appeal to be paid by defendant.
Amended and affirmed.
NOTES
[1] At the trial of the rule nisi, the evidence did not disclose the existence of any community property; therefore, the plaintiff apparently did not press her demands for an inventory of the community property, a permanent injunction prohibiting her husband from disposing of the community property, and for attorneys' fees.