457 So.2d 171 (1984)
Martha Ellard Glass EDELEN, Plaintiff-Appellee,
v.
William Herbert EDELEN, III, Defendant-Appellant.
No. 16473-CA.
Court of Appeal of Louisiana, Second Circuit.
September 26, 1984.
*172 B. Woodrow Nesbitt, Jr., Shreveport, for plaintiff-appellee.
Pringle & Herzog by John R. Herzog, Shreveport, for defendant-appellant.
Before JASPER E. JONES, FRED W. JONES, Jr. and SEXTON, JJ.
JASPER E. JONES, Judge.
The plaintiff wife filed suit seeking a separation based on cruel treatment, custody of the minor child of the marriage, child support and alimony pendente lite. The defendant husband reconvened seeking a separation based on abandonment and cruel treatment and joint custody of the child. After a trial on the merits the trial court rendered judgment granting plaintiff's demands. The judgment limits defendant to one three hour visit with the child per week and orders defendant not to take the child to his parent's home during the visits. Defendant appeals. We amend and affirm.
The issues raised by defendant's appeal are: (1) whether the trial judge erred in finding the wife free from fault in causing the separation; and (2) whether the child visitation privileges granted defendant are unduly restrictive.

FACTS
Plaintiff and defendant were married September 12, 1980. One child, a son age 2, was born of the marriage. Plaintiff had custody of her 2 minor daughters from a previous marriage.
The relationship between the parties began deteriorating shortly after they were married. Plaintiff left the matrimonial domicile after a physical confrontation with defendant on July 2, 1983 and has not returned. The confrontation was over a peach pie defendant brought home from a nearby restaurant. The parties give conflicting accounts of the confrontation.
*173 Plaintiff contends she was on a diet and when she refused to eat any pie defendant became enraged. She testified he grabbed her, shook and slapped her. She stated that while this was going on she told one of her daughters to call her grandfather (plaintiff's father) on the phone. When the daughter tried to make the call defendant slapped the daughter down and ripped the phone out of the wall. Plaintiff then took the children across the street to a neighbor's house where she called her father to come pick her and the children up.
Defendant testified plaintiff became upset when he brought the pie home because it was peach and not strawberry. He stated she chastised and insulted him about his choice of pie. He testified he remained calm throughout the verbal abuse. He admits to slapping plaintiff but contends he did so after she spit in his face. Defendant admits he stopped the daughter from calling her grandfather but claims that all he did was unplug the phone and stated he did not strike the girl.

PLAINTIFF'S FAULT
The party seeking a separation bears the burden of proving by a preponderance of the evidence the facts in support of his demand. Slater v. Slater, 431 So.2d 904 (La.App. 2d Cir.1983); Richard v. Richard, 340 So.2d 1104 (La.App. 3d Cir.1976). Fault is a question of fact. The trial court's finding on the issue will not be disturbed on appeal absent a finding of manifest error. Slater v. Slater, supra; Allemand v. Allemand, 415 So.2d 463 (La. App. 1st Cir.1982). It must be established that a spouse is guilty of conduct sufficient to establish an independent grounds for a separation for the spouse to be adjudicated guilty of fault. Adams v. Adams, 389 So.2d 381 (La.1980).
Defendant contends plaintiff was at fault for abandonment and cruel treatment. We will first consider abandonment.
The abandonment of the matrimonial domicile by either spouse is considered to be fault for purposes of a separation. LSA-C.C. art. 138(5). In order for a party to prevail on an allegation of abandonment it must be shown the other party withdrew from the matrimonial domicile without lawful cause and has constantly refused to return. LSA-C.C. art. 143; O'Pry v. O'Pry, 425 So.2d 986 (La.App. 5th Cir. 1983).
A lawful cause for leaving is a defense to a claim of fault based upon abandonment. Harrington v. Campbell, 413 So.2d 297 (La.App. 3d Cir.1982); Lyles v. Lyles, 126 So.2d 859 (La.App. 2d Cir. 1961); Kendrick v. Kendrick, 236 La. 34, 106 So.2d 707 (1958). A single instance of cruel treatment by the other spouse may be sufficient to constitute lawful cause for leaving. See Seymour v. Seymour, 423 So.2d 770 (La.App. 4th Cir.1982); Gilberti v. Gilberti, 338 So.2d 971 (La.App. 4th Cir. 1976); Dejoie v. Dejoie, 224 La. 611, 70 So.2d 398 (1954). A person is not required to live in fear of receiving bodily harm. See Seymour v. Seymour, supra; Dejoie v. Dejoie, supra.
If plaintiff's testimony is accepted as true, she was justified in abandoning the matrimonial domicile in response to defendant's cruel treatment. The trial judge obviously found that plaintiff was telling the truth. Our task is to decide whether there was sufficient evidence to support such a finding.
The litigants were the only witnesses testifying to the events surrounding plaintiff's leaving the matrimonial domicile; other than the neighbor, Warren Wright, who merely confirmed that plaintiff came to his house with her children and called her father. There is no evidence directly corroborating plaintiff's version of the incident.[1] However, her testimony is corroborated by events occurring subsequent to her leaving. These events show that defendant becomes extremely upset and acts *174 irrationally and sometimes violently when he does not get his way. These events show a continuing pattern of conduct directed toward the plaintiff that supports a finding she was subjected to cruel treatment on the date she left the matrimonial domicile.
On July 3, 1983, the day after plaintiff left, she returned to the matrimonial domicile in her father's car to pick up some personal items. Defendant was there when she arrived. When plaintiff attempted to carry some things out to the car defendant demanded to know what she was removing from the house. Plaintiff testified defendant grabbed her from behind when she tried to go outside and began shaking and hitting her. Defendant stated he only seized an item she was carrying and tried to take it away from her. Plaintiff shouted for help and Wright, who was working in his garage, heard her. When Wright responded to this call for help, he saw plaintiff trying to leave the house and defendant trying to pull her back inside. Defendant had nearly pulled off plaintiff's blouse. Wright went over to try to protect plaintiff and prevent further physical confrontation between the spouses. At about this time plaintiff broke away from defendant and put the items she was carrying in the car. She then went to call the police. As plaintiff departed defendant tried to get into the car to see what plaintiff had removed from the house. Wright attempted to stop him and became engaged in a fight with the defendant.[2] Wright subdued the defendant and held him until the police arrived.
When a police officer arrived on the scene she separated Wright and defendant. Defendant was extremely upset and tried to continue the fight but the officer managed to restrain him. Defendant then wanted the officer to arrest Wright and when she refused the defendant began cursing her. The officer observed scratch marks on plaintiff's face and arms.
A few days later defendant went to plaintiff's church and attempted to discuss with her the possibility of a reconciliation while church services were in progress. While plaintiff was playing the organ defendant approached her several times and attempted to discuss matters related to their separation. Accepting defendant's argument that he did not disrupt church services, we find this incident corroborates plaintiff's version of the separation because it shows defendant's continuing pattern of irrational conduct. During church services is not the time to go up to the organist to discuss personal matters.
On August 2, following an eviction proceeding in which defendant was ordered to vacate the former matrimonial domicile which belonged to plaintiff's father, it was necessary to have the defendant removed from the premises by police officers due to his hostile refusal to surrender possession of the premises to plaintiff and her father.
Plaintiff's testimony describing the conduct of the defendant that caused her to leave on July 2 corroborated by evidence of his continuing pattern of misconduct directed toward her provides substantial evidence to support the trial court's finding that plaintiff was justified in leaving the matrimonial domicile. There is no manifest error in the trial court's determination that the plaintiff did not abandon the defendant.
We now address defendant's contention that plaintiff was guilty of fault based upon cruel treatment which contributed to the separation.
Cruel treatment, in any form, is proper grounds for a separation from bed and board provided the cruelty is of such a nature as to render living together insupportable. LSA-C.C. 138(3); Von Bechman v. Von Bechman, 386 So.2d 910 (La.1980).
Defendant testified plaintiff subjected him to cruel treatment by spitting in his face at the time she left. The plaintiff's detailed description of the circumstances surrounding her departure contained no reference to such an occurrence. We find the trial judge committed no error *175 when he made no finding that based solely upon the testimony of the defendant the plaintiff was guilty of this misconduct.
Defendant argues that plaintiff constantly told him and others that she hated him. He contends that she tried to kill him by putting a black widow spider in his bed and rat poison in his food. There is insufficient evidence in the record to establish these contentions.
Defendant testified that plaintiff had told him that the child born of the marriage was not his. It was stipulated that two witnesses who were not available at trial would testify that they had heard plaintiff make this remark. There is no evidence of the time frame in which the alleged remark was made nor sufficient details of the circumstances which precipitated it. Though the trial judge made no specific finding with regard to it, we cannot find his failure to accept defendant's testimony supported by the stipulation of the testimony of two absent witnesses as establishing plaintiff's fault to be manifest error.
The totality of the evidence supports the trial judge's finding that plaintiff was not guilty of fault which contributed to the separation.

CHILD VISITATION[3]
In support of his argument that the trial court erred in restricting him to one three hour visit per week, defendant cites several cases where the father was granted more extensive visitation rights than he received. Woods v. Woods, 386 So.2d 959 (La.App. 3d Cir.1980); Edler v. Murray, 360 So.2d 205 (La.App. 4th Cir.1978); Johnson v. Johnson, 357 So.2d 69 (La.App. 4th Cir.1978); Litton v. Litton, 299 So.2d 458 (La.App. 2d Cir.1974); Cook v. Wingo, 281 So.2d 867 (La.App. 3d Cir.1973).
These cases indicate that there are two fundamental rules in child visitation cases. The rules are: (1) the paramount consideration in determining visitation rights is the best interest of the child; and (2) the trial court has great discretion in the area and his determination will not be disturbed on appeal in the absence of manifest error. Furthermore, each individual case is dependent upon its own facts. Johnson v. Johnson, supra; Vinet v. Vinet, 184 So.2d 33 (La.App. 4th Cir.1966).
Applying these rules to the instant case, our task is limited to a determination of whether the trial judge abused his much discretion in limiting defendant to the one three hour visit per week.
The only evidence to which defendant points in support of his contention there was an abuse of discretion is the opinion testimony of a psychiatrist, Dr. Richard Williams, who examined plaintiff and defendant prior to trial. Dr. Williams stated that in his opinion there would be no problem in allowing defendant overnight visits and there would be no physical danger to the child on such visits. These remarks do not support defendant's claim of error. The mere fact that defendant would not physically harm the child does not, by itself, mean that it would be in the child's best interest to allow overnight visits. The other remark was made in response to a question involving a hypothetical situation containing certain conditions which had not been met at the time of trial.[4]
The actual recommendation given by Dr. Williams was that plaintiff be granted sole custody of the child and that defendant be allowed reasonable controlled visits. The doctor did not state what he considered to be reasonable visits. Even if he had done so, his recommendation would not have been binding on the trial judge. While a certain amount of deference must be given to expert medical testimony, courts cannot abdicate their decision making *176 responsibilities in favor of the medical profession but must consider all factors present in the case. Broussard v. Broussard, 320 So.2d 236 (La.App. 3d Cir.1975).
The conduct of the defendant discussed in connection with our determination that plaintiff was justified in leaving the matrimonial domicile, indicate that defendant may be emotionally incapable of properly caring for the child. These facts indicate that defendant becomes extremely upset and exercises little self-control in times of crisis. The trial court in his reasons for judgment pointed out the defendant has a high level of external stress, hostility and guilt. The trial judge observed he has a consistent need to control his feelings of anger and has trouble with interpersonal relationships. These findings are supported by the report of Dr. Ronald A. Goebel, a clinical neuropsychologist and Dr. Mark P. Vigen, clinical psychologist, which was filed in evidence. All of these circumstances justify the trial judge's conclusion that it was to the best interest of the child to establish limited rights of visitation.[5]
The trial court's decision to limit defendant to one three hour visit with the child per week is supported by the record. We find no abuse of discretion in the court's determination.
We find nothing in the record to support the order for defendant not to take the child to his parent's home during his visits and we recast the judgment to eliminate this restriction on visitation.
We amend paragraph C.1 of the judgment to delete the clause which provides:
... and while said visitation is occurring, the minor child shall not be taken to the residence of the parents of WILLIAM HERBERT EDELEN, III.
As amended the judgment is AFFIRMED at appellant's cost.
NOTES
[1] Defendant claims that since plaintiff did not specifically deny spitting on him, that fact was conclusively established. We find that plaintiff's failure to mention spitting on defendant during her narrative of the incident constitutes a denial that she did so.
[2] Each man claims the other threw the first punch.
[3] In brief, defendant does not question the trial court's failure to grant joint custody.
[4] Dr. Williams was asked if he saw any problem in allowing overnight visits if defendant lived in his own residence which was large enough to accomodate the child. Although Dr. Williams made it clear that his opinion was based solely upon defendant obtaining such living arrangements, he was not asked why he conditioned his opinion on this fact. At the time of trial defendant lived with his parents.
[5] There is also some indication in the record that defendant has not properly cared for the child during his visits since the physical separation. Plaintiff testified that after the first few visits she noticed defendant always brought the child back wearing a dirty diaper. She began marking the diaper the child was wearing when defendant picked it up. Except for once, the child was wearing the same diaper when defendant returned it. On the occasion that the diaper was changed, defendant did so in the car immediately before returning the child. Defendant's testimony on the issue is equivocal. However, there is some indication he knew plaintiff was checking the diapers and that is the reason he changed the child in the car prior to returning it on the one occasion.