EDMUND M. REGGIE, Judge Pro Tem.
Plaintiff, Velma Henry Prudhomme, appeals the judgment of the trial court find *1294 ing her mutually at fault in causing the separation of the parties and denying her permanent alimony. We affirm.
Willis Prudhomme and Velma Prud-homme were married on May 20, 1951. The parties remained married for nearly 34 years and raised four boys, the youngest being approximately 25 years old.
A review of the record reveals that the marriage between the parties was tumultuous and that the parties fought continuously. However, the marriage did not begin to seriously deteriorate until five years prior to the separation, when Mr. Prudhomme joined a band and started playing at dances three nights a week. Mrs. Prudhomme testified that Mr. Prudhomme would play at dances, often keeping late hours, and that is when their problems started. She admitted that family squabbles occurred every now and then, but she denied ever threatening Mr. Prudhomme with a knife or gun. She also stated that she suspected Mr. Prudhomme of carrying on an illicit affair with a family friend, Enolia Gradney. She suggested that they go to a marriage counselor because things were not getting better between them, but Mr. Prudhomme refused.
Mr. Prudhomme testified at trial that he left the family home on December 28,1983, after Mrs. Prudhomme followed him when he left to go to “a supper,” which, according to the testimony, he and several men frequently held. According to his testimony, when he noticed Mrs. Prudhomme was following him, he drove into a driveway of a house that was being built by Enolia Gradney, who he married several months after his divorce. Allegedly, she exited from her car and started cussing at him and remarked that she was going to kill him when he got home. He never went back home. The next day, a deputy from the Allen Parish Sheriff’s Department accompanied him to their residence so that he could get his clothes.
Willis Prudhomme filed a petition for separation on January 18, 1984, alleging inter alia that Mrs. Prudhomme’s repeatedly leveled false accusations of infidelity and numerous threats of bodily harm were of a such nature as to render their living together insupportable. Mrs. Prudhomme filed an answer and reconventional demand, alleging that Mr. Prudhomme abandoned the matrimonial domicile without just and legal cause, and that he had been guilty of cruel treatment toward her.
On January 10, 1985, Mr. Prudhomme filed a supplemental petition requesting a judgment of absolute divorce based on LSA-R.S. 9:3o!,[1] one year living apart without reconciliation. A judgment of absolute divorce was granted on March 8, 1985 in favor of Mr. Prudhomme. Fault was not ascertained at this time.
Mrs. Prudhomme filed a rule for permanent alimony on March 15, 1986 requesting that she be given $500.00 a month due to her being in necessitous circumstances. In response, Mr. Prudhomme denied that Mrs. Prudhomme was entitled to permanent alimony and averred that the original separation of the parties was occasioned by the fault of Mrs. Prudhomme, or alternatively, by the mutual fault of both parties.
A hearing on the rule was set for July 15, 1986, but after several continuances, the trial on the rule was held on November 10, 1986. By agreement of the parties, the trial was bifurcated. The trial judge decided to receive evidence on the issue of fault before addressing the issues of whether Mrs. Prudhomme was in need of permanent alimony and whether Mr. Prudhomme was financially able to pay. At the conclusion of the hearing, judgment was rendered in open court declaring the original separation to have been caused by the joint or mutual fault of the parties and, pursuant to LSA-C.C. Art. 141, the request for permanent alimony was denied.[2] A judgment was *1295 signed on November 21,1986 and an appeal was taken by Mrs.- Prudhomme on December 5, 1986.
On appeal, Mrs. Prudhomme contends the trial court erred in determining that her conduct was such as to constitute mutual fault within the meaning of LSA-C.C. Art. 141.
Under LSA-C.C. Art. 160, the court may allow a claimant spouse permanent alimony only “when a spouse has not been at fault and has not sufficient means for support.” Ward v. Ward, 339 So.2d 839 (La.1976). Generally, fault is not an issue in divorce proceedings in which divorce is sought on grounds of living separate and apart for one year unless one spouse specifically requests permanent alimony. LSA-R.S. 9:301; Jordan v. Jordan, 408 So.2d 952 (La.App. 2 Cir.1981); Brady v. Brady, 388 So.2d 57 (La.App. 1 Cir.1980).
When and if a claim for permanent alimony is made subsequent to a no fault divorce two jurisprudential principles are applicable; first, the jurisprudence places the burden of proving freedom from fault on the claimant spouse, Smith v. Smith, 216 So.2d 391 (La.App. 3 Cir.1968); and second, in order to preclude alimony, fault on the part of the claimant spouse must be of the same type and magnitude that would constitute grounds for a “fault” separation or divorce under C.C. Articles 138 and 139. Adams v. Adams, 389 So.2d 381 (La.1980); Boudreaux v. Boudreaux, 407 So.2d 1363 (La.App. 3 Cir.1981). While the mutual fault of the parties need not be equal, it must be sufficient standing alone to award the other a separation under LSA-C.C. Art. 138. Harrington v. Campbell, 413 So.2d 297 (La.App. 3 Cir.1982).
In arriving at his determination that there was mutual fault in the separation the trial judge relied heavily on the testimony of Mrs. Irene Henry, Mrs. Prudhomme’s sister-in-law.
At the trial Mrs. Prudhomme’s sister-in-law, Irene Henry, testified that Mrs. Prud-homme continuously nagged Mr. Prud-homme and found fault with everything that he did. Additionally, she stated that Mrs. Prudhomme had a bad temper which would erupt when Mr. Prudhomme would go off in the evenings to referee Little League baseball games or basketball games that were held in the community.
Similar testimony was offered by Willis Prudhomme’s brother, Izelly Landry. He testified that Mrs. Prudhomme frequently lost her temper and that he heard her say on several occasions that she was going to shoot Mr. Prudhomme. Moreover, he stated that Mrs. Prudhomme would also get mad when Mr. Prudhomme went on hunting and camping trips with his friends.
In his brief reasons for judgment, the trial judge stated:
“Here is what I actually believe. I believe the man was probably playing around with that woman who is his present wife. But I believe this. Instead of taking that thing easy, she kept agitating it. That man might have quit her or might have stayed at home. That marriage could have gone. I believe that she was a possessive jealous wife, that wanted her husband to do exactly what she wanted. That might have caused him to fool around with that lady. All in all, I really believe that this marriage was on the rocks and that both of them contributed substantially to the separation and that resulted in the divorce. And either one of them could have independent grounds to secure the separation. Him by not staying enough at the house and her harping on it too much.”
In a divorce or separation proceeding, the question of fault is a factual one, and the trial court’s finding of fact on the issue of fault is entitled to great weight and will not be disturbed on appeal absent a finding of manifest error. Pearce v. Pearce, 348 So.2d 75 (La.1977); Harrington v. Campbell, supra.
We cannot say that the trial court was clearly wrong in finding that Mrs. Prud-homme’s conduct rendered the couple’s living together insupportable. Under existing Louisiana law and jurisprudence, mutu *1296 al incompatibility, fussing, and bickering cannot support a rendition of a judgment of separation, but a continued pattern of mental harassment, nagging and griping by one spouse directed at another can constitute cruel treatment, which is grounds for separation under LSA-C.C. Art. 138. Langton v. Langton, 442 So.2d 1308 (La.App. 3 Cir.1983); Jenkins v. Jenkins, 441 So.2d 507 (La.App. 2 Cir.1983), writ den., 444 So.2d 1223 (La.1984); Loyd v. Loyd, 336 So.2d 912 (La.App. 2 Cir.1976).
At trial, Mr. Prudhomme testified that no single cause or incident led to his leaving the marital domicile on December 28, 1983; rather, he claimed continued mental harassment for a period of several years necessitated that he leave the marital domicile to prevent physical harm to one of the parties. Among the various acts of mental harassment, Mr. Prudhomme alleged that Mrs. Prudhomme would often argue with him four or five hours during the night, and if he went into another bedroom in order to get some sleep, Mrs. Prudhomme would unlock the bedroom door and follow him to continue the argument. He also alleged that Mrs. Prudhomme tried to keep him awake at night so that he would fall asleep on his tractor and suffer serious injury from the equipment he was pulling. Furthermore, he claimed Mrs. Prudhomme would bum or hide clothes that he would buy and not tell her about because she believed some other woman had given him the clothes. According to his testimony, Mrs. Prudhomme was very domineering and he could never do or say anything right. He was under such stress that his doctor told him he was on the verge of having a nervous breakdown and an ulcer.
In addition to the mental harassment, Mr. Prudhomme alleged during the trial that Mrs. Prudhomme pulled a pistol on him, without provocation, and threatened his life. He stated it was at this point that he decided it would be better for him to leave the matrimonial domicile than to risk somebody losing their life. When questioned about the incident, Mrs. Prudhomme admitted that they did have family squabbles, but that they never reached a point where she threatened Mr. Prudhomme with a knife or gun. Although there were no eyewitnesses to the incident, there was sufficient testimony elicited during the trial to corroborate Mr. Prudhomme’s allegations. Mr. Richard Young, who works for the Sheriffs office in Allen Parish, testified that on one occasion he recalled that Mr. Prudhomme stopped him at a Shell Station in Kinder to tell him that Mrs. Prudhomme had threatened him with a gun. Mr. Prud-homme made it known that he did not want to file any charges but that he just wanted to inform someone from the Sheriffs Department of Mrs. Prudhomme’s action.
The testimony of Mrs. Henry seems to indicate that this threat on Mr. Prud-homme’s life occurred after he had returned from a camping and hunting trip with some of his friends. Mrs. Henry recalled that Mrs. Prudhomme telephoned her and said she was going to shoot Mr. Prudhomme when he returned from his trip.
According to Mr. Landry’s testimony, Mrs. Prudhomme threatened Mr. Prud-homme’s life again on the night prior to the separation of the parties after she had followed him to Enolia Gradney’s home. He stated Mrs. Prudhomme called him on the telephone and told him “she was waiting with a gun and she was going to kill him. She was going to blast him.”
The jurisprudence has repeatedly held that the unjustified threatening of a spouse with a firearm constitutes sufficient independent fault to support a separation. Amos v. Amos, 232 La. 178, 94 So.2d 23 (1957); Higginbotham v. Higginbotham, 457 So.2d 165 (La.App. 2 Cir.1984); Land v. Land, 483 So.2d 186 (La.App. 2 Cir.1986). It is apparent from the record that Mrs. Prudhomme's threats were motivated by jealousy and anger with Mr. Prudhomme for not staying at home. The evidence failed to show that Mrs. Prudhomme was physically abused or that there was a reasonable basis for her to have a fear of Mr. Prudhomme such that she would feel compelled to protect herself with a dangerous weapon.
*1297 In conclusion, we find that the record taken as a whole supports the finding of the trial judge that Mrs. Prudhomme was equally at fault in causing the dissolution of the marriage and that she failed to meet her burden of proving freedom from fault. Accordingly, we find that the trial judge’s denial of Mrs. Prudhomme’s claim for permanent alimony was not manifestly erroneous.
For the foregoing reasons we affirm the trial court judgment at the cost of appellant, Velma Henry Prudhomme.
AFFIRMED.

. LSA-R.S. 9:301 provides as follows:
"When the spouses have been living separate and apart continuously for a period of one year or more, either spouse may sue for and obtain a judgment of absolute divorce."

. LSA-C.C. Article 141 provides:
"A separation from bed and board shall be granted although both spouses are mutually at fault in causing the separation. In such cases, alimony pendente lite may be allowed but per *1295 manent alimony shall not be allowed thereafter following divorce.”