337 So.2d 298 (1976)
Earl Clarence GIBBON, Plaintiff-Appellee,
v.
Ruth Phelps West GIBBON, Defendant-Appellant.
No. 12993.
Court of Appeal of Louisiana, Second Circuit.
August 31, 1976.
*299 Feist, Schober & Howell by John L. Schober, Jr., Shreveport, for defendant-appellant.
Hargrove, Guyton, Ramey & Barlow by Billy R. Pesnell, Shreveport, for plaintiffappellee.
Before BOLIN, PRICE and JONES, JJ.
JONES, Judge.
This is a suit by a husband for separation of bed and board on the grounds of mental cruelty. The wife's defense is that she did not subject her husband to mental cruelty, and that if she did, he condoned it by continuing to live with her.
The wife filed a reconventional demand seeking a separation on the grounds of cruel treatment and on constructive abandonment by the husband, and sought alimony in the amount of $2500 per month. The trial court awarded the husband a separation and ordered him to pay the wife $1800 per month alimony pendente lite. The wife appealed and the husband answered the appeal seeking a reduction in the alimony award to $1000 per month.
The issues presented by the wife's appeal are whether the trial court was correct in awarding the husband a judicial separation on the grounds of mental cruelty, and in rejecting her reconventional demand for separation on the grounds of cruelty and constructive abandonment. The amount of the alimony award is also an issue.
Plaintiff and defendant were married October 1, 1971. On the date prior to their marriage they executed an antenuptial contract which precluded the existence of a community of acquets and gains. The wife became extremely unhappy because of the existence of this contract and constantly complained about it and urged her husband to take the necessary legal action to cancel it. He eventually investigated the possibility of doing so, but found that it was legally impossible.
The husband testified that commencing in 1973 and continuing thereafter until the final separation on January 20, 1976, that his wife frequently nagged and complained to him about the existence of the antenuptial contract.
Plaintiff testified his wife publicly embarrassed and humiliated him: at Don's Seafood Restaurant in Shreveport on March 20 and September, 1974; at the International Trade Mart in New Orleans in April, 1974; at Smith's Cross Lake Inn in Shreveport in the summer of 1974; and at Ernest's Winners Club on November 16, 1975. The plaintiff further testified that the nature of defendant's conduct at these public places *300 included in most instances his wife generally nagging, complaining and verbally abusing him in a loud voice, and on several instances actually leaving him in the public place to return from dinner alone. There is evidence on at least one occasion that she used profane language in one of her tirades. The evidence reflects that two of the listed instances occurred in the presence of plaintiff's close friends. One of his friends was subjected to loud verbal abuse by the defendant. This conduct by defendant in the presence of his friends had the effect of increasing the embarrassment and humiliation suffered by the husband. The husband's version of three of the listed occurrences was corroborated by one disinterested witness.
The husband testified that among other cruel treatment his wife subjected him to were the following: (a) she slapped him in their living room in July, 1973, and at the same time broke an ash tray and a picture album; (b) on Mother's Day in 1975, his wife called him an ugly name over the telephone and there is further evidence that she called him several ugly names on other occasions in their home in the presence of the maid; (c) in the fall of 1975 she told her husband she hoped she "was alive when you die so I can laugh in your face"; (d) on another occasion in the fall of 1975 she asked him "How much would you pay me to get out of your life?"; and (e) at Christmas, 1975, in response to a gift of five 100 dollar bills and a bottle of perfume from her husband, she said to him, "Is that all I am worth?". With regard to being called vile names and the remark referred to in item "d", plaintiff's testimony was corroborated by the maid. The defendant did not deny the occurrence of the acts specified in this paragraph.
The plaintiff testified that approximately 20 days before the separation occurred, while the parties were at home, the defendant told him he "was sitting on a time bomb", and when plaintiff sought an explanation of this remark by asking his wife if someone was going to kill him, she said: "Nobody would dirty their hands on you doing that."
Defendant did not deny she told her husband he was "sitting on a time bomb", but denied the explanation of her remark as offered by the husband and indicated she made the remark in reference to the fact that she believed her husband would be upset because his daughter and grandchildren were moving out of the state.
Plaintiff suffers from emphysema for which he takes medication. He testified that on January 2, 1974 when he went to bed he took a dose of Elixophyllian for emphysema, and that he noticed the medicine had a horrible taste and he soon became extremely nauseated and was sick all night; that on the following morning he looked at the medicine bottle and observed it had an unusual appearance. Plaintiff said that he had another full bottle of this medicine, and that about an ounce of the contents had been removed from this bottle. Plaintiff was sick the remainder of that day, Friday, and on Monday, January 5, he carried the medicine to the druggist from whom it was purchased. The druggist submitted the two bottles brought to him by plaintiff, along with a sample from the source of supply from which he filled plaintiff's prescriptions, to a toxicologist of the LSU Medical School. The toxicologist testified that the drug and color content of the medicine had been diluted 20 to 30 per cent.
Mrs. Alma Pinkard, the maid, testified she observed the medicine on January 2 and that the color did not appear normal; that on January 2, 1976, defendant inquired of her if "Mr. Earl" had accused defendant of attempting to poison him, to which she replied in the negative. Plaintiff testified that no one had access to his medicine other than his wife.
Plaintiff believed his wife tampered with his medicine. Approximately one week after receiving the toxicologist's report on the medicine, plaintiff decided he could not continue to endure his wife's cruel treatment, and ordered her to vacate the matrimonial domicile, which was his separate property.
*301 She complied with his demand and approximately one week later he filed this suit.
Louisiana Civil Code Article 138 provides in part:
"Grounds for separation from bed and board
* * * * * *
"3. On account of habitual intemperance of one of the married persons, or excesses, cruel treatment, or outrages of one of them towards the other, if such habitual intemperance, or such ill-treatment is of such a nature as to render their living together insupportable;. ..."
In Carriere v. Carriere, 147 So.2d 668 (La.App. 3d Cir. 1962) the court recognized that mental cruelty may constitute cruelty of such a nature as to justify an award of separation from bed and board in the following language:
"The jurisprudence of this State is established to the effect that behavior causing mental anguish, as distinguished from physical mistreatment, may constitute cruelty of such a nature as to render living together insupportable within the meaning of Article 138(3) of the LSA-Civil Code. . . ."
Id. at page 670
In Sadoff v. Sadoff, 210 So.2d 614 (La.App. 2d Cir. 1968), the court in discussing mental cruelty as a ground for separation, stated:
"A series of studied vexations and provocations by the husband causing mental anguish, as distinguished from physical mistreatment, may constitute cruelty of such a nature as to render living together unbearable and insupportable within the meaning of Louisiana Civil Code Article 138(3); . . . ."
Id. at page 615
The question of whether plaintiff or defendant is entitled to a separation must be determined from the facts. A determination of facts in a case such as this depends largely upon the veracity and credibility of the witnesses and the weight which is given to their respective statements. Since the trial judge observed the witnesses as they testified, he is in a better position to evaluate their testimony and his opinion and conclusion as to the facts are entitled to great weight. Carriere v. Carriere, supra.
The trial judge made a factual finding that the defendant had conducted herself towards her husband in public and otherwise in such a manner as to constitute cruel treatment. The court made a specific finding that the wife had tampered with her husband's medicine. We approve these findings.
Conduct of a similar nature has been recognized as cruel treatment in the following cases: Krauss v. Krauss, 163 La. 218, 111 So. 683 (1927); Kammer v. Reed, 176 La. 1091, 147 So. 357 (1933); Swartz v. Swartz, 191 So.2d 753 (La.App. 2d Cir. 1966).
The defendant's contention that plaintiff condoned her cruel treatment by continuing to live with her is without merit. The jurisprudence has long recognized that forebearance of a spouse by enduring cruel treatment of the other should not be construed as a reconciliation or condonation barring the victim of such treatment from demanding a judgment of separation.
In the Supreme Court decision of Rainwater v. Brown, 221 La. 1033, 61 So.2d 730 (1952) some of a wife's acts of cruel treatment occurred a year or more prior to the date the parties separated, and one or more of the alleged cruel acts occurred within a month of the separation. The court held that the forebearance of the husband enduring these acts of cruel treatment prior to the separation did not constitute a condonation of cruel treatment to bar his suit for separation from bed and board. See also Carriere v. Carriere and Sadoff v. Sadoff, supra.
In this case a separation in fact between plaintiff and defendant occurred between May and August, 1974. Some of the cruel treatment occurred prior to this separation and reconciliation, and some of the *302 acts of cruelty occurred subsequent to August, 1974. While the acts of cruel treatment prior to their separation may be technically condoned since they do not clearly fall within the exception to the rule that cruel treatment is not condoned by forebearance in continuing to live with the guilty spouse as hereinabove set forth, these instances of cruel treatment were properly considered by the trial judge under LSA-C.C. Art. 153:
"In either case the plaintiff shall be precluded from bringing his action; but he shall be at liberty to bring a new suit for causes arising since the reconciliation, and therein make use of the former motives to corroborate his new action."
This article has been construed to provide that proof of prior condoned acts may be considered by the court as corroborating the proof of occurrence of those acts of cruel treatment which occurred subsequent to the reconciliation. Continuing to endure the acts of cruel treatment which occurred after he and his wife resumed living together in August, 1974 does not constitute plaintiff's condonation thereof.
Plaintiff seeks a reduction of the award to his wife of $1800 per month alimony pendente lite, taking the position that the award is excessive and that $1000 would be adequate. Plaintiff is a man of substantial wealth. During 1976 his anticipated income from interest and social security is in excess of $42,000, and he will have income from capital gain sources in addition to this sum resulting in a total taxable income in excess of $75,000.
The wife is entitled to alimony pendente lite in an amount sufficient to maintain her in a style comparable to that which she enjoyed prior to the separation by reason of her husband's means and position. Small v. Small, 173 So.2d 854 (La.App. 4th Cir. 1965). The trial court recognized that plaintiff was wealthy and further recognized that the parties lived in comparative luxury. The court considered that among the numerous items set forth by the wife in a list of her expenses, some were excessive and further noted that some necessary items were omitted from the list. The court concluded that her demand for $2500 monthly was excessive but that she was entitled to $1800 per month to provide her with a standard of living comparable to that which she enjoyed prior to the separation. Plaintiff has ample means to meet the needs of his wife.
The amount to be awarded as alimony pendente lite is largely within the discretion of the trial judge and his conclusions will not ordinarily be interfered with on appeal. Gutierrez v. Gutierrez, 172 So.2d 753 (La.App. 4th Cir. 1965). We find no error in the alimony award.
The judgment is affirmed. Cost of this appeal is assessed equally between the litigants.