494 So.2d 1333 (1986)
Janice Dyar BRASWELL,
v.
James Byron BRASWELL.
James Byron BRASWELL,
v.
Janice Dyar BRASWELL.
No. 18041-CA, 18042-CA.
Court of Appeal of Louisiana, Second Circuit.
September 24, 1986.
*1334 Bodenheimer, Jones, Klotz & Simmons by David Klotz, Shreveport, for defendant-plaintiff-appellant, James Byron Braswell.
B. Woodrow Nesbitt, Jr., Shreveport, for plaintiff-defendant-appellee, Janice Dyar Braswell.
Before MARVIN, SEXTON and NORRIS, JJ.
SEXTON, Judge.
Mr. James Byron Braswell, Jr. appeals the judgment of the trial court rejecting his demands for a legal separation and awarding his wife a legal separation as well as alimony pendente lite and child support. For reasons expressed herein, we amend the judgment of the trial court and affirm as amended.
James Byron Braswell, Jr., appellant, and Janice Dyar Braswell, appellee, were married in Vicksburg, Mississippi, on October 1, 1955. Four children were born of this marriage, only one of whom remains a minor, namely, Susan Bernice Braswell.
The parties resided together at the matrimonial domicile in Shreveport for approximately 30 years until June 5, 1985, when the wife left the matrimonial domicile with the minor child, Susan, and moved to White Deer, Texas. Approximately one month later, on July 3, 1985, Mrs. Braswell filed *1335 suit for separation on the grounds of cruelty and habitual intemperance. In addition, she also sought alimony pendente lite, child support, sole custody of the parties' minor daughter and a preliminary injunction prohibiting alienation of the community assets by her husband. A week later, on July 10, 1985, Mr. Braswell also filed suit for a legal separation from his wife on the grounds of abandonment.
These separate lawsuits were consolidated for purposes of trial. Regarding the issue of custody of the minor child, Susan, the parties entered into a joint custody arrangement with Mrs. Braswell designated as the domiciliary parent.
The evidence introduced by the wife to prove her allegations of cruel treatment and habitual intemperance consisted primarily of her own testimony. Mrs. Braswell testified to approximately 20 incidents, beginning in 1982, in which the husband made various cruel and profane remarks directed at her and family members and displayed embarrassing actions in public. The wife stated that on a few of those occasions the husband also made physical attacks on the wife and family. Parts of this testimony were corroborated by the testimony of two of the parties' children, James Byron Braswell, III and Susan Bernice Braswell. Mrs. Braswell further testified that the majority of these alleged acts of misconduct were precipitated by Mr. Braswell's drinking.
In support of her claim of habitual intemperance, Mrs. Braswell testified that Mr. Braswell had a couple of drinks almost every night, but that he drank most heavily on Wednesdays and Saturdays when he played golf.
The appellant, Mr. Braswell, admitted at trial that he physically assaulted Mrs. Braswell on several different occasions. He also admitted to using the type of language described by Mrs. Braswell. However, Mr. Braswell testified that he does not drink significantly during the week and that he drinks between one and three drinks after he plays golf on Wednesdays and Saturdays.
After hearing all that evidence presented, the trial court determined that Mrs. Braswell was entitled to a legal separation on the grounds of habitual intemperance by her husband and, accordingly, rejected Mr. Braswell's demands for a separation from his wife on the grounds of abandonment. The court awarded appellee alimony pendente lite in the sum of $3,000 per month and child support for their minor daughter, Susan, in the sum of $1,000 per month. Additionally, Mr. Braswell was condemned to provide medical insurance for his wife and daughter, to pay all reasonable and required medical expenses not covered by insurance, to pay automobile insurance for the vehicles driven by Mrs. Braswell and Susan, and to pay the car notes of Mrs. Braswell and James Byron Braswell, III, the son.
On appeal, the appellant asserts the following assignments of error:
1. The district court erred in concluding that the wife proved by a preponderance of the evidence that she was entitled to a legal separation on the grounds of cruelty and habitual intemperance.
2. The district court erred in finding that all prior actions committed by the husband which may have constituted grounds for a separation were not condoned when the wife subsequently resumed a normal marital relationship after the commission of those acts.
3. The district court erred in finding that the evidence supported alimony pendente lite in the sum of $3,000 per month and child support in the sum of $1,000 per month.
4. The district court erred in not applying the totality of circumstances doctrine to the alimony pendente lite award.
The wife in this case alleges that the husband was guilty of habitual intemperance *1336 and cruel treatment, grounds for separation under LSA-C.C. Art. 138(3).[1]
In his opinion, the trial court judge concluded:
The evidence shows that Mr. Braswell, during the time the parties lived together, drank daily (he normally had one or two drinks). The court recognizes that it is not the quantity of alcohol, but rather the extent and habitualness of intoxication that constitutes "habitual intemperance." It was Mr. Braswell's practice to play golf on Wednesdays and Saturdays. He admitted that the bar at his club mixed rather strong drinks. The evidence clearly shows that on almost every Wednesday and Saturday Mr. Braswell drank enough to become intoxicated and the Court finds that this frequency equates to "habitual intemperance."
Mr. Braswell testified that he does not drink much during the week and that he drinks between one and three drinks when he plays golf on Wednesdays and Saturdays. This testimony was corroborated by two of the parties' children, James Byron Braswell, III, and Susan Bernice Braswell. The son testified, "... when he drank the most was usually when he had been at the golf course and that's usually on Wednesday and Saturday and other than that, on weeknights he might have a couple of drinks after work, but nothing too bad except just mostly at the golf course." The daughter testified, "The only time I could tell that [father] had been drinking was Wednesday nights. And that's of course when he would come from the golf course, that's really the only time." We therefore conclude that the trial court incorrectly determined that habitual intemperance was sufficiently established. The testimony of the two children residing at the home during the time of the events related by Mrs. Braswell is not corroborative with respect to alcohol abuse per se. Additionally, habitual intemperance is not established by proof of intoxication on two or three occasions. Rittiner v. Sinclair, 374 So.2d 680 (La.App. 4th Cir.1978); Creech v. Creech, 449 So.2d 1192 (La.App. 2d Cir.1984).
However, the record is replete with evidence of Mr. Braswell's unnecessary and cruel verbal beratements, his obscene language, his unprovoked arguments, his public misconduct, and his physical attacks directed at Mrs. Braswell and family members. Mr. Braswell, in fact, admitted to physically assaulting Mrs. Braswell on the several different occasions she alleged and to directing profane language toward her and other family members. It is evident from the record that Mr. Braswell's conduct was of such a serious and consistent nature that it constituted cruel treatment sufficient to render the couple's marital life unbearable. Halley v. Halley, 480 So.2d 869, (La.App. 2d Cir.1985), writ denied 481 So.2d 1336 (La.1986).
However, the appellant contends that even if the wife proved cruel treatment by a preponderance of the evidence, that the evidence shows that Mrs. Braswell nonetheless voluntarily resumed her marital relationship with Mr. Braswell after these incidents which she contends entitle her to a legal separation. Mr. Braswell argues that the last two incidents which Mrs. Braswell claims gave her lawful cause to leave the matrimonial domicile occurred on April 16 and April 27, 1985, but that nevertheless, subsequent to these two incidents, she and Mr. Braswell spent the first weekend in May 1985 in New Orleans, Louisiana, and engaged in marital relations both nights they were there.
Indeed, the trial judge agreed that Mrs. Braswell's actions in New Orleans condoned and forgave Mr. Braswell's acts of misconduct.

*1337 Mrs. Braswell alleged and testified concerning numerous acts of misconduct on the part of Mr. Braswell beginning in 1982, but the court finds that she is deemed to have legally condoned all of the acts other than the habitual intemperance.
Thus, having determined that Mrs. Braswell is not entitled to a separation based on habitual intemperance by Mr. Braswell, the issue becomes whether Mrs. Braswell condoned the acts of cruel treatment, or whether her conduct amounted to forbearance.
In judging similar circumstances, the jurisprudence usually notes the general proposition that cohabitation after cruel treatment is usually construed as a condonment of that treatment. However, after making that observation, the jurisprudence often determines under the circumstances of a particular case that an intent to condone is not present and finds the offended spouse only forbearing the conduct at issue. Finch v. Finch, 479 So.2d 473 (La. App. 1st Cir.1985); Souza v. Souza, 428 So.2d 1204 (La.App. 5th Cir.1983); Seymour v. Seymour, 423 So.2d 770 (La.App. 4th Cir.1982). Thus the distinction between forbearance and condonment can be difficult to discern.
However, certain observations can be safely made. Condonment has been found subsequent to an isolated aberrant act where the offended party's intention to remain in the matrimonial setting is manifest. Maranto v. Maranto, 297 So.2d 704 (La.App. 1st Cir.1974). That intent is determined by consideration of the totality of the circumstances including resumption of continual marital relations. Seymour v. Seymour, supra. Forbearance is found where the offended spouse tolerates an extended period of distasteful and obnoxious behavior of either a physical nature, Seymour v. Seymour, supra, or of a mental nature, Rainwater v. Brown, 221 La. 1033, 61 So.2d 730 (1952); Gibbon v. Gibbon, 337 So.2d 298 (La.App. 2d Cir.1976); Souza v. Souza, supra. The brief resumption of marital relations followed by an exit from the matrimonial setting has been held not to have evidenced an intent to condone the extended period of abusive behavior, particularly where a recent violent physical or emotional incident has occurred shortly before the brief resumption of relations. Gibbon v. Gibbon, supra; Finch v. Finch, supra; Seymour v. Seymour, supra.
In the instant case, we determine that the brief resumption of relations during the New Orleans holiday when contrasted to the extended inappropriate and distasteful behavior of Mr. Braswell is insufficient to amount to condonement on the part of Mrs. Braswell. We therefore determine that the trial judge was clearly in error in so holding. In summary on this issue, we affirm the separation in favor of Mrs. Braswell based on the extended period of cruel treatment endured by her. Further, under the totality of circumstances of this case, we determine that this treatment was not condoned by her.
The remaining question deals with support for the wife and daughter. The appellant contends that the award of alimony pendente lite in the amount of $3,000 per month and child support in the amount of $1,000 per month is excessive and should be reduced to $2,300 and $700, respectively.
The factors to be considered in setting alimony pendente lite are statutorily rendered in LSA-C.C. Art. 148.
If the spouse has not a sufficient income for maintenance pending suit from separation from bed and board or for divorce, the judge may allow the claimant spouse, whether plaintiff or defendant, a sum for that spouse's support, proportioned to the needs of the claimant spouse and the means of the other spouse.
In his affidavit of income and expenses, Mr. Braswell noted a gross income of $10,847 per month. Additionally, he has numerous benefits provided by his company that, for practical purposes, decrease his personal expenses. In determining Mr. Braswell's means, the trial court deducted the $840 fixed obligation for his wife's and son's car notes. This deduction left Mr. *1338 Braswell with approximately $10,000 gross income. Frank E. Cook, C.P.A., testifying for Mrs. Braswell, asserted that Mr. Braswell's income tax liability, assuming alimony was assessed in the range which was rendered by the trial court, would be approximately $2,700 per month. This liability leaves a sum of approximately $7,300. Although Mr. Braswell was also ordered to pay medical insurance and expenses and to pay automobile insurance for the vehicles driven by his wife and daughter, in addition to the car notes and any alimony assessed, it is clear that he has significant means to provide support for his wife and child.
However, appellant points out that the award of alimony is some $400 in excess of the expense list submitted by Mrs. Braswell. Appellant also notes that Mrs. Braswell claims excessive clothing needs amounting to $600 a month, particularly since she conceded she had spent approximately $7,000 in June and July for clothes for herself and Susan. Thus, appellant argues that Mrs. Braswell is contending her clothing needs amount to $15,000 a year. Appellant also points to other expense items which he contends are inflated, such as education expenses amounting to $260, recreation and special lessons of $450 a month and gifts of $250 a month for both herself and the minor child. Additionally, Mr. Braswell complains that the trial court failed to consider Mrs. Braswell's potential income from modeling for which she had been training herself during the latter part of the marriage and for which she claimed certain expenses in seeking this alimony.
We note that Mrs. Braswell was not employed at the time of the separation. Her only employment during the marriage was a part-time job at Southern Schmidt Transport, one of her husband's companies, for a short period through 1984. She had $9,000 in an interest bearing account and no other income at the time of the hearing.
It is well settled in this Circuit that when judging alimony pendente lite per LSA-C.C. Art. 148 that the claimant spouse's earning capacity is not a factor. Arrendell v. Arrendell, 390 So.2d 927 (La. App. 2d Cir.1980), Galbraith v. Galbraith, 382 So.2d 1042 (La.App. 2d Cir.1980).[2] Additionally, the claimant spouse's assets are not a factor. Wilhite v. Wilhite, 408 So.2d 973 (La.App. 2d Cir.1981); Staser v. Staser, 347 So.2d 514 (La.App. 2d Cir.1977).
Because alimony pendente lite is ordinarily determined shortly after separation, it is designed to preserve and continue the status quo insofar as maintenance and support are concerned. Arrendell v. Arrendell, supra. The claimant spouse's needs have been defined as the amount necessary to maintain the previous standard of living. Whatley v. Whatley, 430 So.2d 129 (La.App. 2d Cir.1983). However, the couple's lifestyle at the time of the hearing is the significant consideration, rather than at some time previous thereto. Lamb v. Lamb, 427 So.2d 899 (La.App. 3d Cir.1983). Of course, the trial court has great discretion in alimentary matters. Khaled v. Khaled, 424 So.2d 370 (La.App. 2d Cir.1982).
The aforementioned legal principles and the circumstances presented by this couple considered, we conclude that the alimony awarded to Mrs. Braswell was excessive and constitutes an abuse of discretion. Several factors influence this decision, principally, the fact that the alimony awarded is some $400 above her list of expenses. Additionally, her clothing expenses appear particularly inflated while other expense items such as recreation and gifts appear somewhat inflated.
We therefore determine that the alimony awarded to Mrs. Braswell by the trial court should be reduced to the sum of $2,500 per month. The judgment of the trial court is accordingly amended to reduce the personal alimony of Janice Dyar Braswell from *1339 $3,000 per month to $2,500 per month and, as amended, is affirmed for the reasons aforesaid.
AMENDED, and AS AMENDED, AFFIRMED.
NOTES
[1] LSA-C.C. Art. 138 provides in part:

Separation from bed and board may be claimed reciprocally for the following causes:
....
3. On account of habitual intemperance of one of the married persons, or excesses, cruel treatment, or outrages of one of them toward the other, if such habitual intemperance, or such ill-treatment is of such a nature as to render their living together insupportable;
....
[2] The circuits are divided on whether earning capacity should be considered in determining alimony pendente lite. For a contrary view, see Gravois v. Gravois, 495 So.2d 315 (La.App. 4th Cir.1986); Whipple v. Whipple, 424 So.2d 263 (La.App. 1st Cir.1982), writ denied 426 So.2d 179 (La.1983).